**In re Imogene I. KELTON, Debtor.**

**Bankruptcy No. 90-30580-C.**

United States Bankruptcy Court,
W.D. Texas,
El Paso Division.

Feb. 3, 1992.

---

Andrew B. Krafsur, El Paso, Tex., Chapter 7 Trustee.

1. The property is not the debtor's homestead.

Fay C. Gillham, Calame, Linebarger & Graham, Austin, Tex.

## ORDER ON TRUSTEE'S OBJECTION TO TAX CLAIM OF THE CITY OF EL PASO

LEIF M. CLARK, Bankruptcy Judge.

CAME ON for hearing the objection of Andrew B. Krafsur, Chapter 11 Trustee, to the tax claim of the City of El Paso. The city is a fully secured creditor holding a tax lien against the real property of the debtor located at 6369 Montana Avenue in El Paso, Texas.[1] The city filed a claim for $39,445.12, which includes $6,591.04 in penalty and interest. The trustee maintains that the interest charged is improper, in light of this court's decision in *In re Laymon*, 117 B.R. 856 (Bankr.W.D.Tex.1990). The trustee says that the maximum to which the city is entitled is the federal judgment rate. The city, of course, disagrees, relying on an old Supreme Court decision decided under the Bankruptcy Act, *Meilink v. Unemployment Reserves Comm.*, 314 U.S. 564, 62 S.Ct. 389, 86 L.Ed. 458 (1942).

In *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989), the Supreme Court ruled that allowance of post-petition interest under § 506(b) of the Bankruptcy Code is not limited to holders of consensual liens. Thus, a creditor such as the City of El Paso holding a tax lien arising by operation of state law may recover postpetition interest on its oversecured claim. *Ron Pair* did not address the issue of the applicable interest rate to be allowed such creditors, however.

This court, in *In re Laymon, supra*, ruled that the federal judgment rate applied when computing an oversecured creditor's entitlement to postpetition interest under § 506(b). *Id.* at 864; *see also The Landing Associates, Ltd.*, 122 B.R. 288, 297 (Bankr.W.D.Tex.1990). The court's rationale was not premised on whether the lien in question was consensual or nonconsensual.

Because the city holds a tax lien which is to be satisfied from the estate's assets (the property was sold and the trustee currently holds the cash for distribution), the city is a creditor of the debtor. As this court observed in *Laymon*, "from and after the petition date, creditors hold the equivalent of a federal judgment against the bankruptcy estate's assets, enforceable only in federal court." *Laymon*, 117 B.R. at 862.

■ The city, like any other creditor of the estate, filed a proof of claim, and as a creditor, is entitled to no better or worse treatment than any other creditor holding a claim which is fully secured. Even though the city's lien arose by operation of state law, its recovery from the estate is subject to the distribution mechanisms of the Bankruptcy Code, just as are the liens of other creditors. The source of the lien does not control the interest rate; rather it is the Bankruptcy Code itself which is the genesis of an oversecured creditor's entitlement to interest out of estate assets, regardless the source of the lien. Since "[a]ll creditors, including oversecured creditors, are deemed to have an allowed claim as of the bankruptcy filing which is the functional equivalent of a federal judgment against the estate's assets ... the oversecured creditor's federal judgment would accrue interest at the federal judgment rate." *Laymon*, 117 B.R. at 864; *Lewith v. Irving Trust Co.*, 67 F.2d 855 (2d Cir.1933) (allowance of claim has effect of judgment in bankruptcy proceeding). As this court observed in *Laymon*, "[t]he use of the federal rate yields an 'equitable solution' to the competing claims of the secured and unsecured creditor that also honors the principle of applying federal law to the payment of postpetition interest." *Id.; see Vanston Bondholders Protective Committee v. Green*, 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162 (1947).

■ *Laymon* does not stand for the proposition that a higher interest rate can never be awarded to a particular creditor in a particular case, however. When the estate is fully solvent, for example, allowing a higher rate may be justified as the only party competing for the dollars sought via the higher interest rate is the debtor itself. *See Laymon*, 117 B.R. at 864–65. In that situation, the policy concerns which animated use of the federal judgment rate (i.e., the competing claims of unsecured creditors of the estate) are no longer present and equity dictates that the court enforce the bargain originally struck between the prepetition debtor and the secured creditor.

■ There may be other situations in which equity also justifies using a higher rate (even the contract or statutory rate) as well. *See In re Shaffer Furniture Co.*, 68 B.R. 827, 830 (Bankr.E.D.Pa.1987). The question is whether this is one of those cases. The city relies on *Meilink*, cited above, for justification that city property taxes should receive special treatment under "equitable principles." *Meilink*, 314 U.S. 564, 567, 62 S.Ct. 389, 391; *Shaffer Furniture, supra*. The city's reliance on *Meilink* is misplaced, however.

The precise language upon which the city hangs its hat is Justice Jackson's observation that

Delinquent taxpayers as a class are a poor credit risk; tax default, unless an incident of legitimate tax litigation, is, to the eye sensitive to credit indications, a signal of distress. A rate of interest on tax delinquencies which is low in comparison to the taxpayer's borrowing rate—if he can borrow at all—is a temptation to use the state as a convenient, if involuntary, banker by the simple practice of deferring the payment of taxes.

*Meilink*, 314 U.S. at 567, 62 S.Ct. at 391. Accurate as this observation is, it must be placed in the context of the case. The debtor there argued that the taxing authority's interest claim should be disallowed *as a penalty*. Under the Bankruptcy Act, penalties for other than actual pecuniary loss could not be allowed. *Id.* at 566, 62 S.Ct. at 390 (citing § 57(j) of the Bankruptcy Act). The Court's observation, quoted above, was made in support of its conclusion that the interest charged, even though it exceeded the usual interest rates that might otherwise be charged on such indebtedness, was in fact legitimate compensa-

tion for the use and retention of money and not a penalty. The Court did *not* hold that this was the rate of interest that should be recovered under equitable principles, but only that the rate was not a penalty. *Meilink* thus does not stand as direct support for the city's position in this case, especially because there was no counterpart to Section 506(b) in the Bankruptcy Act itself.

Indeed, the Supreme Court's decision in *Vanston,* cited above, is more direct authority for the manner in which this claim should be handled, and that case (as this court observed in *Laymon* ) supports the trustee's position here. The Court's observations in *Meilink* are as applicable to a consensual lienholder with a credit line upon which a debtor draws shortly before filing, yet the holding in *Vanston* (and *Laymon* ) would apply with equal force to that creditor's claim for interest under § 506(b).

■ There are no special equities raised by the fact that the interest claim asserted here happens to be held by a taxing authority. That the creditor is "involuntary" in the sense that no credit was intended to have been extended to this debtor does not change that creditor's position as a competing claimant for the estate's limited assets as part of the larger distribution scheme in bankruptcy. If an equitable principle is to be applied, it must be one which appropriately balances the *competing* interests of claimants in the bankruptcy context, and not one which is claimant-specific. *Vanston, supra.* Otherwise, courts would be called upon to fashion some "equitable exception" for virtually every kind of secured claimant, a slippery slope on which the exception would quickly swallow the rule (to mix a metaphor).[2]

Nor does the fact that the interest rate has its source in a state statute have any effect on this court's treatment of the claim in this case. The Bankruptcy Code frequently preempts the operation of numerous state law provisions. For example, § 506(b) has been held to preempt state law provisions allowing attorney's fees as a set percentage of debt. *In re Hudson Shipbuilding, Inc.,* 794 F.2d 1051, 1056 (5th Cir.1986); *In re Haber Oil Co.,* 82 B.R. 435, 437 (Bankr.N.D.Tex.1988). A bankruptcy court may also have jurisdiction to review a state tax assessment where the taxpayer failed to pursue state remedies. *City Vending of Muskogee, Inc. v. Oklahoma Tax Comm'n,* 898 F.2d 122 (10th Cir.1990), *cert. den.,* —— U.S. ——, 111 S.Ct. 75, 112 L.Ed.2d 48 (1990); *In re Fairchild Aircraft Corp.,* 124 B.R. 488 (Bankr. W.D.Tex.1991); *In re Smith,* 122 B.R. 130 (Bankr.M.D.Fla.1990); *see also In re McLean Enterprises, Inc.,* 105 B.R. 928 (Bankr.W.D.Mo.1989) (§ 365 preempts state laws affecting executory contracts). Here, there is a direct conflict between the state law which mandates one rate of interest and the Bankruptcy Code, which superimposes the bankruptcy process on the allowance of claims against estate assets.

■ The focal policy of bankruptcy is equitable and ratable distribution of estate assets among its creditors. *In re Claussen,* 118 B.R. 1009, 1018 (Bankr.D.S.D. 1990). States, by means of their own laws, can never devise creditor preferences which federal law does not recognize. *Id.* If the state statutory rate were to be applied here, the oversecured creditor would receive a larger portion of the estate's pie, contrary to the equitable distribution scheme contemplated by the Bankruptcy Code, ultimately undermining the uniformity of bankruptcy laws nationwide. *See Laymon, supra.* To the extent the state

---

**2.** It is worth noting that, in other cases, it is *the estate* which has argued on "equitable principles" that a secured creditor in a given case should receive interest under § 506(b) at a rate *less* than the creditor's contract or statutory rate of interest. *See, e.g., In re Entz–White Lumber and Supply, Inc.,* 850 F.2d 1338, 1342 (9th Cir. 1988); *In re Hollstrom,* 133 B.R. 535, 538–39 (Bankr.D.Colo.1991); *In re A.J. Lane & Co., Inc.,* 113 B.R. 821, 825–27 (Bankr.D.Mass.1990); *In re*

*Gladdin,* 107 B.R. 803, 805–06 (Bankr.M.D.Ga. 1989). By applying the federal judgment rate, (which in more inflationary times might well exceed a given contract rate), a rule with broad and even application for good times and bad is employed. The rule in *Laymon* cuts both ways, while sparing the court the *ad hoc* decisionmaking exercise that deriving an interest rate from solely "equitable principles" otherwise demands.

**22**

statute conflicts with the Bankruptcy Code, the latter controls. *See City of Bridgeport v. Debek,* 210 Conn. 175, 554 A.2d 728 (1989).

For the reasons stated, the court finds and concludes that the objection to the claim of the city is well-taken. The city is directed to amend its claim, computing its interest at the current federal judgment rate. The claim will then be allowed as amended.

So ORDERED.