Peter W. **WASSERMAN** and Sharon M. Cerny, Appellants,

v.

**CITY OF CAMBRIDGE,** Appellee.

Bankruptcy Appeal Civ. No. 92–12175–MA.

United States District Court, D. Massachusetts.

Jan. 29, 1993.

Peter J. Haley, Gordon & Wise, Boston, MA, for appellants.

Joan N. Feeney, Hanify & King, P.C., Boston, MA, for appellee.

## MEMORANDUM AND ORDER

MAZZONE, District Judge.

Peter W. Wasserman and Sharon M. Cerny ("Appellants" or "Debtors") bring this appeal from an order of the Bankruptcy Court. The sole issue presented is the appropriate rate of post-petition interest to be applied to the real estate tax claims of the City of Cambridge ("Appellee" or "the City").

In the earlier bankruptcy proceedings, the parties agreed that the City had a valid pre-petition secured tax claim in the amount of $596,971.60, which, counting pre-petition interest, amounted to a claim of $670,613.00. The parties disagreed, however, as to the appropriate post-petition interest rate to apply to the tax claim. The

City claimed that the applicable post-petition interest rate was the Massachusetts statutory rate of 16%, established by M.G.L. ch. 60 § 62. The Debtors claimed that the applicable rate was the federal judgment rate, established pursuant to 28 U.S.C. § 1961.[1] The Bankruptcy Court entered an Order in favor of the City adopting the Massachusetts statutory rate ("the statutory rate"). 143 B.R. 312 (1992). This appeal followed and presents an issue of law reviewable *de novo*. *In the Matter of Laymon*, 958 F.2d 72, 73 (5th Cir.1992) (citing *In re Consolidated Bancshares, Inc.*, 785 F.2d 1249, 1252 (5th Cir.1986).

One of the principal objectives of the bankruptcy laws is to achieve the equitable distribution of an estate's assets among all creditors. *In re Kelton*, 22 B.C.D. 936, 938 (Bankr.W.D.Tex.1992); *In re Morrissey*, 37 B.R. 571, 574 (Bankr. E.D.Va.1984). To that end, a court's job is to determine the rate of post-petition interest that will treat all creditors most fairly. To make that determination, a court must examine the equities and determine the post-petition interest rate in light of the facts of the particular case. *In the Matter of Laymon*, 958 F.2d 72, 75 (5th Cir.1992).

In the present case, in addition to the City of Cambridge, there are unsecured creditors who have claims on the Debtors' assets. The Debtors' bankruptcy plan establishes a junior trust out of which these unsecured creditors are to obtain repayment. The unsecured creditors, however, draw on this trust only after the estate has paid off its more senior claims, including administrative costs and tax claims. According to the Debtors, the estate is already unable to satisfy all its administrative claims. *Appellants' Brief*, at 10. Thus, there is a high likelihood, as in all bankruptcies, that the unsecured creditors will not be repaid in full. The extent of their losses, then, will depend on whether priority claims, like the tax claim, are entitled to the statutory rate of post-petition interest or the federal judgment rate in this

---

**1.** For discussion of federal judgment rate, see    infra note 2 and accompanying text.

case, which is 8.155%.[2] Granting the City the statutory rate, which is approximately twice the federal judgment rate, will cause the unsecured creditors a direct harm by diminishing the value of the estate from which they hope to draw. Consequently, it would be inequitable to the unsecured creditors to impose the higher, statutory rate.

Another central objective of bankruptcy is to give the debtor a fresh start. *See In re Morrissey*, 37 B.R. at 574. At 16%, the statutory rate is overinflated and comes up far short of that mark. In 1979, the statutory rate was increased from 12% to 16% to reflect the rise in commercial interest rates at that time. *Compare* 1976 Mass.Acts ch. 250 § 3 (12% interest rate) with 1979 Mass. Acts ch. 503 § 2 (16% interest rate). However, since then, especially in recent years, interest rates have relaxed dramatically.[3] As a result, the Massachusetts statutory rate no longer reflects current market rates, and it now serves its purpose crudely. It should be possible to tailor the rate of post-petition interest in bankruptcy so that creditors are protected but not enriched by an undeserved windfall and so that debtors are held to their obligations but not denied the dispensation they are entitled to in bankruptcy. I find, therefore, that the 16% statutory rate fails to provide the right balance between the interests of the creditors and debtors in this case.

By contrast, the federal judgment rate treats these interests more evenly. Corresponding to the continuous yield fluctuations in Treasury bills, the federal judgment rate produces a reasonable rate of post-petition interest that roughly matches current market rates. It preserves the value of the taxes owed the City without unduly impoverishing the Debtors. I conclude that the federal judgment rate most appropriately balances the equities in this case.

A number of other courts who have looked at the question of post-petition interest in a chapter 11 proceeding agree that the most equitable interest rate is the federal judgment rate. *In re Kelton*, 22 B.C.D. 936, 938 (Bankr.W.D.Tex.1992) (relied on federal judgment to calculate post-petition interest on city's real property tax claim); *In re Connecticut Aerosols, Inc.*, 31 B.R. 883, 887 (Bankr.D.Conn.1983) (employed federal judgment rate to fix interest rate on delinquent tax claim); *In re Tacoma Recycling, Inc.*, 23 B.R. 547, 550 (Bankr.W.D.Wash.1982) (federal judgment rate adopted to determine post-petition interest on federal tax claims). For example, in *Connecticut Aerosols*, supra, the court required as part of the reorganization plan that the debtor pay interest on a tax claim at the federal judgment rate. *Id.*, 31 B.R. at 887. The court was persuaded to fix the post-petition interest at that rate because it is closely tied to current economic conditions. *Id.* at 886. Unlike other rates, the court found the federal judgment rate the least static, noting that it is fixed every four weeks, when the Treasury regularly auctions its bills. *See id.; Tacoma Recycling*, 23 B.R. at 550.

■ I am persuaded by the reasoning in *Connecticut Aerosols*, that the mechanism

---

**2.** The parties disagree over what the federal judgment rate would be were the Court to apply it in this case. The Debtors' claim that the rate would be 4.58%; the City calculates the rate at 7.53%. 28 U.S.C. § 1961 provides that interest on money judgments "shall be calculated from the date of entry of the judgment, at a rate equal to the coupon issue yield equivalent ... of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the date of judgment." Upon the filing of bankruptcy, claims of creditors are treated as the functional equivalent of a federal judgment against the estate's assets. *See In re Laymon*, 117 B.R. 856, 864 (Bankr.W.D.Tex.1990), *rev'd on other grounds, In the Matter of Laymon*, 958 F.2d 72 (5th Cir.1992). The Debtors, Peter Wasserman

and Sharon Cerny, filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code. According to the Administrative Office of the United States Courts, the equivalent coupon issue yields on May 31, 1990 and June 28, 1990, the last auctions prior to the Debtors' filings, were 8.24% and 8.09%, respectively. Because the Debtors' bankruptcy cases were consolidated, I take an average of the two yields to determine a reasonable judgment rate for the consolidated estate. In the end, I find that the federal judgment rate in this case is 8.155%

**3.** For example, home mortgage rates now hover just above eight percent.

for determining the rate of post-petition interest should not be a static one, rigidly set by statute. Rather, it should provide, as the federal judgment rate does, a fluid approach to determining the post-petition interest rate. I, therefore, decline to apply the Massachusetts statutory rate in this case.

Nevertheless, the City argues that this Court should adopt the statutory rate, citing *In re Russo*, 63 B.R. 335 (Bankr. D.Mass.1986). In *Russo*, Judge Lavien held that an employer, who had failed to pay income and payroll taxes, was obligated to pay post-petition interest on the tax delinquency at the statutory rate of 16%. *Id.* at 338. Implicitly recognizing the punitive character of the statutory rate, the judge explained that in chapter 11 bankruptcy proceedings, unlike chapter 7 proceedings, a punitive post-petition interest rate may be proper.[4] *See id.* at 337. The judge reasoned that in a chapter 11 reorganization the debtor remains in business and, therefore, its unsecured creditors are relatively unharmed by the high, statutory rate; whereas, in a chapter 7 liquidation, such a punitive rate would not be allowed because it would deplete the estate's assets and inflict direct harm on any unsecured creditors. *See id. Accord In re Newbury Cafe*, 72 B.R. 478, 481–82 (Bankr.D.Mass. 1987). The court, however, implicitly acknowledged that, even in chapter 11 proceedings, employing the statutory rate would be improper if it harmed unsecured creditors. *See Russo*, 63 B.R. at 337–38. Turning to the particular facts in *Russo*, the court then stated that "in this case," there was no evidence the unsecured creditors would be harmed by employing the statutory rate of interest. *Id.* at 338.

The same cannot be said, however, with respect to the unsecured creditors in the present case. As I stated before, they stand second in line to the distribution of an already inadequate estate. Unlike those in *Russo*, these unsecured creditors may suffer directly from the imposition of the statutory rate. Under these circumstances, therefore, it would be unfair to

apply a penalty to the Debtors when the sting would be felt so sharply by the unsecured creditors.

The City responds, however, that such an outcome would not be inequitable. The City argues that the unsecured creditors were aware of the Debtors' duty to pay real estate taxes and the possible consequence, should the Debtors fail to do so, that they would have to pay the statutory rate of post-petition interest. Thus, the City contends that the statutory rate does not impose an inequity on these unsecured creditors, or any unsecured creditors for that matter.

This argument proves too much and swallows the exception that Judge Lavien implicitly recognized in *Russo*, namely, that in some cases the statutory rate will prove an undue hardship to unsecured creditors. *See* 63 B.R. at 337–38. Granted, unsecured creditors take certain risks with their loans. That is not to say, however, that they assume all risks, including the imposition of a statutory interest rate in bankruptcy. The fact that the Bankruptcy Code is silent on the question of post-petition interest rates and that the courts have disputed the issue contradicts the City's position that the unsecured creditors simply assumed the risk. For the above reasons, I conclude that the Debtors must repay the post-petition interest on their tax delinquency at the federal judgment rate of 8.155%.

In accordance with the foregoing, the Order of the Bankruptcy Court is reversed. An order will issue establishing the post-petition interest rate in this case at the federal judgment rate of 8.155%

---

**4.** The debtor in *Russo* was involved in a chapter 11 reorganization. *Id.* at 336.