**In re Mary E. DeMAGGIO, Debtor.**

**Bankruptcy No. 92–11161–JEY.**

United States Bankruptcy Court,
D. New Hampshire.

Nov. 3, 1994.

Raymond J. DiLucci, Concord, NH, for debtor Mary E. DeMaggio.

Mark S. Gearreald, Engel, Gearreald & Gardner, P.A., Exeter, NH, for Creditor Town of Norwood.

Lawrence P. Sumski, Chapter 13 Trustee, Amherst, NH.

### MEMORANDUM OPINION

JAMES E. YACOS, Bankruptcy Judge.

Mary DeMaggio filed for chapter 13 bankruptcy relief on April 10, 1992. At the time of the filing of the petition, she owed the Town of Northwood $15,228.41 for unpaid real estate taxes and $753.64 for unpaid public assistance loans, including accrued interest at rates specified by the applicable state statutes up to the date of the filing. See Debtor's Second Amended Chapter 13 Plan of Reorganization Dated May 8, 1993 (Court Doc. No. 28). Under applicable state statutes the Town held valid lien claims against the debtor's assets as of the filing date and the parties agree that the Town is oversecured with regard to these lien claims.

The precise issue before the Court is what rate of postpetition interest should be applied to these nonconsensual oversecured state tax

and general assistance liens in the context of a Chapter 13 plan. The debtor's chapter 13 plan proposes to pay the full amount of the Town of Northwood's claim, with postpetition interest calculated from the date of the petition to the effective date of the plan and over the life of the five year plan at the federal judgment rate as determined at the time of the filing of the bankruptcy petition.[1] The Town of Northwood has objected to confirmation of the chapter 13 plan contending that (1) under § 506(b) of the Bankruptcy Code the Town is entitled to postpetition interest calculated at the state statutory rate[2] and (2) under § 1322(b)(2) of the Code the debtor's Chapter 13 plan may not modify the interest rate on the Town's secured claim as provided for by state statute. The interest rate applied to the Town's claim will have a direct impact on the feasibility of the debtor's chapter 13 plan, i.e., this debtor cannot perform any plan within the requirements of chapter 13 if the 18 percent interest rate is used.

### DISCUSSION

The basic facts are not in dispute. The Town of Northwood holds oversecured lien claims against the debtor. The parties do not dispute that some amount of interest is due. The disagreement arises as to what interest rate should be utilized. The Town of Northwood's contention that the state statutory rate of 18 percent should apply really implicates not only § 506(b) but also § 1325(a)(5)(B) of the Bankruptcy Code in the procedural context of the present case. In addition, as noted above, the Town also contends that the § 1322(b)(2) prohibition on modification of security interests in the debt-

or's principal residence precludes postconfirmation reduction of the interest rate from the state statutory rate to the federal judgment rate in the debtor's chapter 13 plan. Each contention shall be addressed separately but in reverse order.

### *Section 1322(b)(2)*

Section 1322(b)(2) states that a chapter 13 plan may "modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence.*" (emphasis supplied) A "security interest" is defined by the Code as a "lien created by an agreement" 11 U.S.C. § 101(51). Thus, under § 1322(b) a plan may not modify the rights of the holder of a *consensual* claim secured by the debtor's principal residence.

The Town of Northwood holds a nonconsensual claim secured by the debtor's principal residence. By virtue of state statute, the Town of Northwood retains a lien for all taxes assessed against the owner of property as of the date of the assessment (April 1) until October 1 of the following year. N.H.Rev.St.Ann. 80:19. If the owner of the property does not pay the outstanding taxes by December 1 after the assessment, the tax collector may execute a lien against the property in accordance with certain notice procedures. N.H.Rev.St.Ann. § 80:59 et. seq. The Northwood tax collector executed a lien against the DeMaggio home on June 21, 1990 (for 1989 property taxes); February 5, 1991 (for 1990 property taxes) and March 13, 1992 (for 1991 property taxes). In addition, the Town of Northwood holds a lien for general assistance loans which arose by virtue of N.H.Rev.St.Ann. § 165:28.

---

1. The Federal Judgment Act, 28 U.S.C. § 1961(a), provides that the 'federal judgment rate' shall be calculated as follows:

 Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two week United States Treasury Bills settled immediately prior to the date of judgment.

 The Federal Judgment Rate on April 10, 1992, the date of the filing of the chapter 13 petition was 4.55 percent. Although, the debtor's chapter 13 plan initially used a rate of 3.25% as the

Federal Judgment Rate on the date of the petition in order to calculate the plan payments (Ct.Doc. No. 28), the debtor later stipulated that the Federal Judgment Rate at that date was in fact 4.55%. (Ct.Doc. No. 39).

2. Under New Hampshire law the interest rate calculated on unpaid real estate taxes is 18 percent per annum calculated from the date of execution of the recorded lien until payment in full. N.H.Rev.Stat.Ann. § 80:69 (1993). Interest on general assistance loans is 6% per annum commencing one year after the recording of the lien. N.H.Rev.Stat.Ann. § 165:28 (1993).

As noted above, "security interest" is defined by the Code as a "lien created by an agreement." 11 U.S.C. § 101(51). The Town's liens, albeit *secured claims,* were clearly not *consensual* agreements between the taxpayer and the Town. Thus, the Town's tax claims fall outside the definition of a consensual "security interest" as defined by the Code. *DeSarno v. County of Allegheny,* 169 B.R. 329, 332–33 (Bankr.W.D.Pa. 1994) (real estate tax claims are not a "statutory interest" protected under § 1322(b)(2)); *In re McDonough,* 166 B.R. 9, 13 (Bankr. D.Mass.1994) (judicial lien not protected by § 1322(b)(2)); *In re Seel,* 22 B.R. 692 (Bankr. D.Kan.1982) (mechanic's lien, as statutory lien, is not protected from modification by § 1322(b)(2)); Cf. *In re Lionel Corp.,* 29 F.3d 88, 94 (2nd Cir.1994). The Town's attempt to construe a nonconsensual tax lien as a security interest protected under § 1322(b)(2) is unpersuasive.

■ Even if there were some question or ambiguity about the statutory language, the legislative history of the section supports the foregoing construction of the statute. It is well settled that the legislative intent behind § 1322(b)(2) was specifically to provide special protection to home lenders and establish stability and encourage the making of home loans in the residential housing lending market. *In re Wetherbee,* 164 B.R. 212, 215 (Bankr.D.N.H.1994); *In re Boisvert,* 156 B.R. 357, 358 (Bankr.D.Mass.1993). The legislative history reveals a Congressional intent to protect those lenders who provide home mortgage financing and not lenders engaged in other areas of financing who took a security interest in the residence to secure other debts. *Id.* The protective legislation and its rationale therefore has no meaningful connection to *nonconsensual* liens that arise simply by operation of law. The Town of Northwood's objection under § 1322(b)(2) accordingly cannot be sustained.

### Sections 506(b) and § 1325(a)(5)(B)

■ As a general rule, interest on prepetition claims stops accruing as of the date of the filing of the bankruptcy petition. *In re D.C. Sullivan & Co., Inc.,* 929 F.2d 1, 2 (1st Cir.1991). The exception to this rule is the oversecured creditor who holds a claim with a "security cushion" in the collateral sufficient to cover both the principal and postpetition interest. *United Savings Assn. v. Timbers of Inwood Forest,* 484 U.S. 365, 372, 108 S.Ct. 626, 631, 98 L.Ed.2d 740 (1988). Under 506(b), the oversecured creditor is entitled to postpetition interest on their claim until payment of their claim or until the effective date of the plan. *Rake v. Wade,* —— U.S. ——, ——, 113 S.Ct. 2187, 2190, 124 L.Ed.2d 424 (1993); *In re Laguna,* 944 F.2d 542, 544 (9th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1577, 118 L.Ed.2d 219 (1992).[3]

■ The Supreme Court has held that the language of § 506(b) entitles holders of both consensual and nonconsensual oversecured claims to postpetition interest on their claim. *U.S. v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). In *Ron Pair,* the Court held that the language of the Bankruptcy Code mandated the application of postpetition interest for both voluntary secured claims arising under a security agreement and involuntary claims which arise by operation of law such as a judicial or statutory lien. *Id.* at 240, 109 S.Ct. at 1029. The question of what rate of interest applies, which is the question before the Court today, has not been addressed by the Supreme Court. Likewise, there is no consensus among the courts as to what the § 506(b) rate of interest should be based upon. It needs to be emphasized that the § 506(b) issue deals only with the question of accrual of postpetition interest from the date of the chapter 13 filing to the effective date of a confirmed plan.[4] *Rake v. Wade,* —— U.S. at ——, 113 S.Ct. at 2190.

■ The determination of whether the creditor is entitled to postpetition interest is a question of federal law, *Vanston Bondhold-*

---

3. The decision in *Rake* required payment of interest on arrearages on a home mortgage being cured under a chapter 13 plan.

4. The question of the appropriate ongoing treatment of the "allowed secured claim" under a plan cramdown provision pursuant to § 1325(a)(5) is an entirely different question. See discussion below.

*ers Protective Committee v. Green,* 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162 (1946); *Debentureholders, Protective Committee v. Continental Inv. Corp.,* 679 F.2d 264 (1st Cir. 1982), *cert. denied,* 459 U.S. 894, 103 S.Ct. 192, 74 L.Ed.2d 155 (1982), albeit the federal court will normally enforce a contractual rate of interest agreed to by the parties in the absence of any strong and unique countervailing factors. *Vanston,* 329 U.S. at 159, 163, 165, 67 S.Ct. at 238, 240, 241; *In re W.S. Sheppley & Co.,* 62 B.R. 271 (Bankr. N.D.Iowa 1986). In the *Sheppley* case, the undersigned Judge, sitting by designation, held that a contractual provision for default rate of interest in a consensual security agreement would not be enforced *post-bankruptcy* based upon the particular facts there involved. This flexible approach was followed with regard to contractual default interest rate provisions in *In re D.W.S. Investments, Inc.,* 121 B.R. 845 (Bankr.C.D.Cal. 1990) (court "chooses to adopt a flexible approach initially set forth in *Vanston* and later adopted ... in *Sheppley* ").

 Even if a secured claim arises by operation of state law and the state statute imposes a predetermined rate of interest on the claim, the Bankruptcy Court is not necessarily bound by the rate of interest imposed by the state statute. The Bankruptcy Code is the "genesis of an oversecured creditor's entitlement to interest out of estate assets, regardless [of] the source of the lien." *In re Kelton,* 137 B.R. 18, 20 (Bankr.W.D.Tex. 1992). The Bankruptcy Court accordingly may exercise some degree of discretion in determining the appropriate rate of postpetition interest on an oversecured claim. *In re Clark,* 168 B.R. 280, 284 n. 16 (Bankr. W.D.N.Y.1994) (*citing In re Williams,* No. 93–CV–6492, slip. Op. at 17 (W.D.N.Y. May 27, 1994)); Cf. *In re LaPiana,* 100 B.R. 998 (N.D.Ill.1989), *aff'd* 909 F.2d 221 (7th Cir. 1990) (bankruptcy court retains some limited discretion to reduce or eliminate postpetition interest). While there is a continuing dispute as to the *extent* of the bankruptcy court's discretion with regard to allowance of postconfirmation interest to oversecured creditors, most courts addressing the matter, including the Court of Appeals for this Circuit, have indicated that there remains some

discretion in that area to consider the equities of the particular situation and an appropriate balancing. See *In re D.C. Sullivan & Co., Inc.,* 929 F.2d 1, 5–6 (1st Cir.1991).

In *Wasserman v. City of Cambridge,* 151 B.R. 4, 5 (D.Mass.1993), the District Court of Massachusetts held in a chapter 11 case that a nonconsensual secured lien claim is not entitled *as a matter of law* in a bankruptcy case to a state statutory interest rate. The Court in *Wasserman* held instead that the appropriate rate of postpetition interest to be applied to a nonconsensual secured property tax lien, such as is involved in the case before me, is a fact specific determination based on the equities of each individual case.

> One of the principal objectives of the bankruptcy laws is to achieve the equitable distribution of an estate's assets among all the creditors. *In re Kelton,* 22 B.C.D. 936, 938 [137 B.R. 18] (Bankr.W.D.Tex.1992); *In re Morrissey,* 37 B.R. 571, 574 (Bankr. E.D.Va.1984). To that end, a court's job is to determine the rate of post-petition interest that will treat all creditors most fairly. To make that determination, a court must examine the equities and determine the post-petition interest rate in light of the facts of the particular case. *In the Matter of Laymon,* 958 F.2d 72, 75 (5th Cir.1992).

*Wasserman,* 151 B.R. at 5. The Court also considered the Bankruptcy Code commitment to the debtor's "fresh start" in choosing the appropriate rate. *Id.* at 6.

The issue was before the *Wasserman* court on the debtor's "Opposition to the Claim of the City of Cambridge For Real Property Taxes and Motion to Determine Real Property Taxes in Accordance with 11 U.S.C. § 505" and the City's response thereto. *In re Wasserman,* 143 B.R. 312 (Bankr.D.Mass. 1992). Thus, in that case, the court did not address present value considerations under cramdown of a chapter 11 plan. The *Wasserman* court was concerned only with appropriate postpetition interest rate to apply to determine the proper valuation of the City's claim. The *Wasserman* bankruptcy petition was filed on June 11, 1990 and the *Cerny* bankruptcy petition, which was substantively consolidated with the *Wasserman*

case on May 2, 1990, was filed on July 23, 1990. Two years later, a plan had not yet been confirmed, thus the rate of postpetition interest was of significant concern to the parties.

With these factors in mind, the District Court in *Wasserman* concluded that as between the Massachusetts statutory rate and the federal judgement rate, the federal judgement rate was more responsive to current market conditions and thus more effectively preserved "the value of the taxes owed the City without unduly impoverishing the Debtors." *Id.* The Court specifically rejected the state statutory rate as too static and unresponsive to current market conditions to "provide the right balance between the interests of the creditors and debtors in this case." *Id.* Although the Court did not specifically preclude the use of the state statutory rate in a Chapter 11 proceeding, it found in this particular case, where the funds available were already unable to satisfy the administrative claims, charging a higher rate on the secured tax claims would impose an undue hardship on the unsecured creditors. *Id.* at 5, 7; compare *In re Russo*, 63 B.R. 335 (Bankr.D.Mass.1986) (debtor had sufficient equity in property to pay tax claims and interest at state statutory rate).

 This Court takes from the *Wasserman* decision the principle that state property tax liens are not entitled as a matter of law to state statutory interest rate provisions as part of their treatment under plan provisions under the reorganization chapters of the Bankruptcy Code. This Court also follows the logic of balancing the equities in terms of the actual economic facts in the particular reorganization case "during the law's delay" from the date of filing to the date of action on the debtor's proposed plan in determining "the allowed secured claim" that will be dealt with under the plan. The present case is like *Wasserman* in that it is clear that this debtor does not have the ability to pay the 18 percent statutory rate of interest and still present a confirmable plan that would provide distribution to other creditors.

The New Hampshire statutory rate was established at a 18 percent rate in 1987.[5] This followed a time when commercial interest rates were running at 20 percent and higher and many taxpayers found it to their advantage to delay payment of property taxes and take advantage of the interest differential to the detriment of the towns. Cf. *Meilink v. Unemployment Commission*, 314 U.S. 564, 567, 62 S.Ct. 389, 391, 86 L.Ed. 458 (1942) ("A rate of interest on tax delinquencies which is low in comparison to the taxpayer's borrowing rate—if he can borrow at all—is a temptation to use the state as a convenient, if involuntary, banker by the simple practice of deferring the payment of taxes."). Now that commercial rates have dropped into single figures the state statute in a sense is an anachronism since no property taxpayer would defer tax payments for his own advantage at the current statutory rate. On the contrary, it is the town taxing authority that is now getting in effect a windfall by the differential. Cf. *DeSarno v. County of Allegheny*, 169 B.R. 329, 335 (Bankr.W.D.Pa. 1994). While some differential is necessary to encourage prompt tax payments, the present deferential is arguably much higher than would be needed for that purpose. See *Matter of Fi–Hi Pizza*, 40 B.R. 258 (Bankr. D.Mass.1984).

On balance, considering this debtor's financial situation and considering that this secured claim could be deemed an allowed secured claim as of the date of filing, since the debtor never disputed the principal tax amount or the accrued interest up to the date of the bankruptcy filing, the Court concludes that the use of the federal judgment rate for § 506(b) purposes is appropriate in this case as it was in the *Wasserman* case. Cf. also *In re Clark*, 168 B.R. 280, 284 (Bankr.W.D.N.Y.

---

5. Prior to 1987, the only remedy available to the town to redeem unpaid real estate taxes was the tax sale procedures outlined under N.H.Rev.St. Ann. § 80:32. Prior to 1981, under the tax sale procedure, interest was calculated on the unpaid balance at 11 percent from the time of sale to the time of payment in full. In 1981, the interest rate was changed from 11 percent to 18 percent. In 1987, when the tax lien procedure was enacted, the legislature continued to utilize 18 percent as the interest rate to be paid. Both sections were revised in 1991 with no changes made to the interest rate to be applied.

1994). The parties have stipulated that the federal judgment rate as of the original filing date on April 10, 1992 was 4.55 percent. Accordingly, that rate will be deemed the appropriate interest rate to apply to the Town of Northwood's tax and general assistance lien claims existing as of the date of the filing of the bankruptcy to determine the "allowed secured claim" that will be dealt with under the plan pursuant to § 1325(a)(5) of the Code.[6]

Turning to the cramdown provision under § 1325(a)(5) of the Code, it is important to note that that statutory provision permits confirmation of a plan over the objection of a secured claim holder under various options, including subsection (5)(B)(ii) which provides that as to "each allowed secured claim provided for by the plan" the plan should provide that the holder retain the lien securing such claim and that "the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim. . . ." This cramdown provision regarding secured claims is essentially the same as the provision in § 1129(b)(2)(A)(i)(II) dealing with chapter 11 reorganization plans. *Matter of Jordan*, 130 B.R. 185 (Bankr.N.J. 1991). Under both provisions, the plan proponent is required either to pay the allowed secured claim in full, on the effective date of the plan, or if the claim is to be paid in installments over the life of the plan the total of such payments must have a present value as of the effective date of the plan equal to the amount of the allowed secured claim. *5 Collier on Bankruptcy*, ¶ 1325.06[4][b][iii][B] at 1325–46; ¶ 1129.03[4][f][i] at 1129–97 (15th Ed.1994).[7]

■ As I noted in *In re Computer Optics, Inc.*, 126 B.R. 664 (Bankr.D.N.H.1991), the question of permissible treatment of an objecting secured creditor under the cramdown provisions is not properly a question about "interest" upon a "coerced loan" but rather a process of giving present value to a stream of payments under a plan that does not pay the allowed secured claim in full on the plan's effective date. Present value can of course be achieved by adding a rate of interest to the plan payments of the allowed secured claim, but it is important to remember that the rate of interest does not stem from any prebankruptcy contractual undertakings by the debtor with the secured creditor, *Id.*, nor *a fortiori* does it stem from any state statutory interest provisions in the case of nonconsensual liens. In this context therefore the real issue before this Court is what rate of interest should be charged on the Town's secured claim as required under § 1325(a)(5)(B)(ii) in terms of a present value analysis.

Although § 506(b) and § 1325(a)(5)(B)(ii) both mandate a calculation of interest, there are different objectives underlying the actual selection of the interest rate under each section. *In re Snider Farms*, 83 B.R. 977 (Bankr.N.D.Ind.1988). As a result, the interest rate that will return the present value under the plan under § 1325(a)(5)(B)(ii) is not necessarily the same interest rate used to determine the allowed amount of the claim under § 506(b). *Id.* at 988. While § 506(b) determines the exact amount of the claim as of the "effective date of the plan" § 1325(a)(5)(B)(ii) requires the payments made under the plan return the present value of that amount to the creditor. *In re Busone*, 71 B.R. 201, 203 (Bankr.E.D.N.Y. 1987). The two sections complement each other and together ensure the full payment of the value of the secured creditor's claim.

■ Courts are generally in agreement that an interest rate to compute present value must be responsive to current economic conditions. Although opinions vary as to the best rate to reach this objective, courts agree that an unchanging fixed rate established at some prior time is not appropriate

---

6. As noted above, the federal judgment rate is based upon the most recent auction of 52–week Treasury Bills. Since most chapter 13 cases come up for plan confirmation within a matter of months, well short of a year, the federal judgment rate is particularly appropriate for this purpose.

7. See also discussion on this point in the chapter 13 context by the Supreme Court in *Rake v. Wade*, —— U.S. at ——, ——, 113 S.Ct. at 2191, 2193.

in a present value analysis. *In re Southern States Motor Inns, Inc.*, 709 F.2d 647 (11th Cir.1983), *cert. denied*, 465 U.S. 1022, 104 S.Ct. 1275, 79 L.Ed.2d 680 (1984) (rejected use of § 6621 interest rate on federal tax liens because unresponsive to current market conditions); *In re Tacoma Recycling*, 23 B.R. 547 (Bankr.W.D.Wash.1982) (same); *In re Fisher*, 29 B.R. 542 (Bankr.D.Kan.1983) (same). In this context, the New Hampshire statutory rate of interest imposed upon delinquent tax liens, which is currently set at 18 percent, is clearly inappropriate. This rate, which is currently over 10 percent above the treasury bill rate, has no relation to current economic conditions.

Furthermore, the statutory rate paid on delinquent taxes, even if periodically adjusted, arguably would still be unsuitable to the goals and objectives of a bankruptcy reorganization. Interest rates on delinquent taxes frequently incorporate a punitive aspect to discourage nonpayment. Thus, even if the rate fluctuates with federal interest rate changes, an additional percentage is added to further the objectives of the taxing authority and is incompatible with the rehabilitative objectives of the Bankruptcy Code. *In re Camino Real Landscape Maint. Contractors*, 818 F.2d 1503, 1507 (9th Cir.1987); *In re General Development Corp.*, 135 B.R. 1008, 1012 (Bankr.S.D.Fla.1991); *Matter of Fi–Hi Pizza*, 40 B.R. 258, 269–71 (Bankr.D.Mass 1984); *Cf. In re Schneider*, 162 B.R. 199 (Bankr.E.D.Wis.1993).

■ In the *Computer Optics* decision cited above this Court addressed the question of the appropriate interest rate to apply on a secured claim in the context of a cramdown pursuant to a Chapter 11 plan. In that case, the debtor's plan proposed to continue to pay the contract rate of interest on their bank loans while extending the duration of the loans over a year beyond the termination date of the original obligation. The Bank objected on the basis that the plan was not fair and equitable and did not meet the requirements of § 1129(b) at this proposed interest rate. The Bank then proposed that

the Court adopt a "market rate analysis" approach in determining the appropriate rate to apply.

The Court in *Computer Optics* rejected both proposed rates and determined that a "riskless rate" with an additional risk increment, if appropriate, was more reflective of the language and underlying rationale of § 1129(b) of the Bankruptcy Code.[8] The Court stated:

> On balance, this Court is persuaded that the better approach is that taken in the *Doud* case and similar decisions that place the primary emphasis upon determining the appropriate riskless rate to reach the present value of the deferred stream of payments to the secured creditor, with an additional upward adjustment possible in an appropriate case to take into account any general risk attributable to the closeness of the decision finding the plan to be feasible.

126 B.R. at 672 (referring to *U.S. v. Doud*, 869 F.2d 1144 (8th Cir.1989)).

The reasoning underlying this Court's decision in *Computer Optics* is equally applicable in this case. The present value language of § 1325(a)(5)(B)(ii) is virtually identical to the present value language of § 1129(b)(2)(A)(i)(II) that was at issue in the *Computer Optics* case. Most courts have interchangeably applied analysis under § 1129 with § 1325. *U.S. v. Neal Pharmacal Co.*, 789 F.2d 1283 (8th Cir.1986); *Matter of Southern States Motor Inns, Inc.*, 709 F.2d 647 (11th Cir.1983), *cert. denied* 465 U.S. 1022, 104 S.Ct. 1275, 79 L.Ed.2d 680 (1984); *but see In re 222 Liberty Assoc.*, 108 B.R. 971, 995 n. 16 (Bankr.E.D.Pa.1990). For the reasons outlined in *Computer Optics*, the court will utilize the riskless rate as the basis for a present value analysis of the value of a secured creditor's claim for purposes of determining the appropriate treatment of the claim in a chapter 13 plan.

The record indicates that the riskless rate as of the May 1994 confirmation hearing, in terms of U.S. Government five year bond

---

8. The "riskless rate" being the current rate of interest being paid on government treasury bonds of comparable duration. 126 B.R. at 672.

rates, was 6.68 percent. The parties have stipulated that the Court may use the riskless rate as of that date should it choose that approach, notwithstanding the delay in reaching a decision in this matter.[9] The Court has concluded that the riskless rate approach will be used and concludes further that this approach will be used with regard to *both* the property tax lien claim and the general assistance lien claims involved.[10]

Turning to the question of whether an additional risk increment rate should be added, the Court notes that the record in this case establishes that the value of the property in question is $100,000 (Court Doc. No. 13). Since the Town of Northwood is in first position to realize its lien claims out of the value of the property it is obvious that the Town has a substantial cushion of equity to protect itself from any decline in values and other normal risk factors. While the risk involved is minimal in that sense, the Town does run the chance of some delay and administrative costs not recoverable should the debtor fail to perform under the plan, as brought out in detail during the course of the final hearing. These additional factors very likely are common to all municipalities facing possible delay and additional activity should a chapter 13 debtor fail to perform a confirmed plan covering unpaid tax or other municipal lien claims. The Court accordingly concludes that the riskless rate plus an additional 1 percent risk increment rate is appropriate for treatment of unpaid property tax and general assistance liens in a chapter 13 proceeding.

### CONCLUSION

The foregoing leads to the following general conclusions with regard to debtors filing chapter 13 petition in factual and economic situations comparable to that of the present debtor: (1) An undisputed secured claim scheduled by a debtor for unpaid state property taxes or general assistance liens is deemed allowed as of the filing date and such claim shall accrue postpetition interest at the Federal Judgment Rate under § 506(b) of the Code for purposes of determining plan confirmation; and (2) The question of the appropriate cramdown requirements of such an "allowed secured claim" under § 1325(a)(5) of the Code will require provision for payment of interest upon the allowed secured claim under the "riskless rate/risk increment" approach used in the *Computer Optics* decision cited above.

The use of the Federal Judgment Rate for the interim stage prior to confirmation is appropriate, in that the scheduling of an undisputed claim by a debtor is equivalent to the entry of judgment by the Court and the confirmation of a plan is the functional equivalent to execution upon that judgment by the creditor. If the plan provides for full payment on the effective date of the plan that ends the matter. If the plan provides for deferred payments, the provisions of § 1325(a)(5) then become applicable and govern the further treatment of the claim with appropriate present value analysis of any stream of payments proposed.

The Court therefore finds and concludes that the pending plan of reorganization can be confirmed provided that it is amended to provide interest rates for the preconfirmation and postconfirmation stages of this proceeding in accordance with the foregoing determinations. The debtor has indicated that it will so amend if necessary and can meet the relatively small resulting increase in plan payments.

The Court by separate order will incorporate this ruling by reference and will set down a further hearing for final consideration of the plan for confirmation, should it be so amended, and upon a further showing by the debtor to confirm that it can meet the increased plan payments attributable to the change in interest rates from the original

---

**9.** As it happens, the riskless rate, i.e., the five year treasury bond rate, at the time of the bankruptcy filing on April 10, 1992 was an almost identical 6.66 percent (Court Doc. No. 39).

**10.** This means that the rate on the property tax lien in effect will be *lowered* from the 18 percent statutory rate but will be *increased* over the 6 percent statutory rate with regard to the general assistance lien claim.

plan to the rates required by this ruling.[11]

### ORDER

This case which was taken under advisement on June 18, 1993 came on for further oral argument on May 23, 1994 on confirmation of debtor's Second Amended Chapter 13 Plan of Reorganization dated June 7, 1993 (Ct.Doc. No. 28) to determine as a matter of law what rate of interest to apply to the Town of Northwood's oversecured tax and general assistance lien claims pursuant to 11 U.S.C. § 506(b) and § 1325(a)(5)(B). In accordance with the conclusions of law set forth in the Memorandum Opinion entered contemporaneously this date, the Court hereby orders as follows:

1. The Town of Northwood's secured tax and general assistance lien claims as of the date of filing of this chapter 13 case were in the amount of $15,228.41 and $753.64, respectively, including accrued interest at rates specified by the applicable state statutes up to the date of filing. These amounts are undisputed and are deemed allowed.

2. The interest rate on the Town of Northwood's claims from the date of the filing of the petition to the date of the entry of the order of confirmation shall be 4.55 percent, which was the Federal Judgement Rate (28 U.S.C. § 1961) as of April 10, 1992, the date of the filing of the bankruptcy petition.

3. The total amount of the Town's "allowed secured claim" to be subjected to plan confirmation under the § 1325(a)(5)(B) proviso shall be the total amount of principal and interest as determined under the preceding paragraph.

4. The total amount of the Town's allowed secured claim shall be paid under the plan, in installments over the 5–year life of the plan, with interest at 7.68 percent per annum, which the Court determines to have a present value equal to the value of the allowed secured claims.

5. The debtor has indicated that it will amend its plan to include these interest rates. The showing at the last hearing would indicate the debtor can feasibly meet these slightly increased interest rates.

6. A continued confirmation hearing shall be held on *November 22, 1994* at 3:00 in the Bankruptcy Courtroom, Fourth Floor, 275 Chestnut Street, Manchester, New Hampshire, to consider such amended plan. The chapter 13 trustee shall submit a proposed order of confirmation at that time.

DONE and ORDERED.

**11.** It should be made clear that this decision in this chapter 13 proceeding, applying the riskless rate/risk increment approach used in the prior *Computer Optics* chapter 11 decision, does not mean that in all cases the state statutory rate on secured property tax liens would be avoided. If an arguably abusive situation were presented, i.e., with no reorganization in the bankruptcy court necessary to resolve other financial problems of the debtor and/or get a distribution to general creditors, such a case could be subject to dismissal as a bad faith case under § 1307(c) of the Bankruptcy Code. Cf. *In re Gonic Realty Trust*, 909 F.2d 624 (1st Cir.1990); *In re Marsh Fairway*, 148 B.R. 721 (Bankr.D.N.H.1992); *In re Nesenkeag*, 131 B.R. 246 (Bankr.D.N.H.1991).