SAROKIN, Circuit Judge,
concurring in part and dissenting in part:
I join Parts I, II, III, IV, V.A, and V.B.(l) of the Majority’s opinion. However, because I do not believe that the statutory rate should apply to postpetition interest, I dissent from the Majority’s analysis and conclusion in Part V.B.(2).
I agree with the Majority that the “cost of funds” approach adopted by the bankruptcy court is flawed because it under-compensates the municipality and it offers the debtors a windfall by enabling them, in effect, to borrow funds from the municipality at rates that are generally available only to state entities.
But because I do not agree with the Majority’s relianee on General Motors Acceptance Corp. v. Jones, 999 F.2d 63, 67 (3d Cir.1993), I would reject as well the Plaintiffs’ suggestion that we apply the statutory rate to post-petition interest payments. The situation here differs from that in Jones in one important way:, in Jones, the creditor was a commercial lender, in the business of lending money to earn a profit. Unlike the Majority, see Majority Op., typescript at 1128, I believe that this difference is significant.
I. The statutory rate
In a market that is subject to the rigors and constraints of competition, the interest rate charged by a commercial lender (Lender A) should reflect the approximate cost of capital plus transaction costs, and a small profit component. If interest is set at a rate that substantially exceeds Lender A’s costs in order to yield greater profits, competitors should be able to lure borrowers away from Lender A by setting their rates below that charged by Lender A while still earning a profit. Ultimately, the more competitive the market, the more closely the rate will reflect the costs incurred by the lender. Therefore, setting post-petition interest at a rate equal *1132 to the rate charged by a creditor-lender in the commercial market should come closest to compensating that creditor both for the non-availability of its capital and for the costs of maintaining the relationship, and should therefore “put the secured creditor in an economic position equivalent to the one it would have occupied had it received the allowed secured amount immediately, thus terminating the relationship between the creditor and the donor.” Jones, 999 F.2d at 66-67.
Here, the creditors are governmental entities. The interest rates that they can charge “debtors” — i.e., those who have defaulted on their tax payments — are not constrained by competitive considerations, but imposed by statute. These rates were set at their current level in the early 1980s, and have not been modified since. “Courts are generally in agreement that an interest rate to compute present value must be responsive to current economic conditions” and “that an unchanging fixed rate established at some prior time is not appropriate in a present value analysis.” In re DeMaggio, 175 B.R. 144, 150-51 (Bankr.N.H.1994). It is easy to understand why: market rates have dropped significantly since the early 1980s. The statutory rates have not followed the commercial market’s downward path and as a result “ha[ve] no relation to current economic conditions.” Id. at 151. In fact, they far exceed what the Plaintiffs could obtain under current market conditions. Because they are so high, the statutory rates now “include a punitive element that is contrary to the purposes of the Bankruptcy Code” and “inimical to financial rehabilitation of the debtor.” In re Camino Real Landscape Maintenance Contractors, Inc., 818 F.2d 1503, 1507 n. 2 (9th Cir.1987). See also In re DeMaggio, 175 B.R. at 151 (noting that “[ijnterest rates on delinquent taxes frequently incorporate a punitive aspect to discourage nonpayment.”).[1]
Because statutory rates are not subject to the discipline of the market, and because considerations of deterrence may in fact warrant a rate of interest for tax evasion that far exceeds costs, there is no reason to expect that the statutory rates are calculated to compensate the Plaintiffs for the present value of their claims, and to serve the objective of section 1325(a)(5)(B)(ii), which is “to put the creditor in the same position it would have been in if it had been allowed to end the lending relationship at the point of the bankruptcy filing by repossessing the collateral.” Jones, 999 F.2d at 69. Therefore, I reject the approach recommended by the Plaintiffs and espoused by the Majority, and would not set the postpetition interest rate at the statutory rate.[2]
II. The prime rate
I would hold, instead, that the appropriate rate to compute the present value of a claim by an oversecured government creditor pursuant to section 1325(a) (5) (B) (ii) is the rate charged by commercial banks to prime commercial loan customers — that is, the prime rate — for a loan of equivalent amount and duration. This method has been adopted by other courts, see, e.g., In re Jordan, 130 B.R. 185, 191 (Bankr.D.N.J.1991); In re Hudock, 124 B.R. 532, 534 (Bankr.N.D.Ill.1991), and it addresses most of the concerns raised by alternative methods.
First, because it imposes a rate higher than the municipal bond rate, it offers the Plaintiffs a measure of compensation for the various costs, beyond the costs of capital, *1133 incurred in the delayed collection of tax payments.
Second, because it is based on a market rate, it is sensitive to changes in the costs of borrowing in the larger economy, and derivatively to the costs of borrowing for municipal governments as well. “Market rates are the best indicators of the present value of deferred payments because they are products of supply and demand, reflecting the interactions of economic variables that affect the cost of lending money.” In re Ivey, 131 B.R. 43, 49 (Bankr.N.C.1991).
Third, because it is divorced from the statutory rate, it does not include a punitive element that is inimical to the purposes of bankruptcy reorganization.
Fourth, it is a readily available figure, and therefore relatively easy to compute.
Fifth, it does not create any incentives for debtors to delay payment of their real property taxes, since they would incur little benefit from such a delay.
I note that the Plaintiffs had urged that we consider a variation of this approach if we rejected the statutory rate. Specifically, they had urged that we adopt the prevailing commercial market rate, but taking into account factors such as the term of the payout period, the value of security and the risk of default, the statutory rate of interest, and the characteristics of the debtor in each case. Clm. Brf. at 34. Several circuits have adopted this measure of present value for debt owed to government, albeit in the context of a Chapter 11 bankruptcy. See, e.g., In re Camino Real Landscape Maintenance Contractors, Inc., 818 F.2d at 1504 (holding that “the debtor must pay the government interest at the rate the debtor would pay a commercial lender for a loan of equivalent amount and duration, considering the risk of default and any security”); United States v. Neal Pharmacal Co., 789 F.2d 1283, 1289 (8th Cir.1986); In re Southern States Motor Inns, Inc., 709 F.2d 647, 652-53 (11th Cir.1983) (same). Under this more refined approach, “the bankruptcy court must make a case-by-case determination of what interest the reorganizing debtor would have to pay a creditor in order to obtain a loan on equivalent terms in the open market.” In re Camino Real Landscape Maintenance Contractors, Inc., 818 F.2d at 1508.
The approach urged upon us by the Plaintiffs is unnecessarily unwieldy, and therefore I would reject it. All three cases cited by the Plaintiffs dealt with the proper method for determining the rate of interest to be applied in calculating deferred payments of delinquent federal taxes pursuant to 11 U.S.C. § 1129(a)(9)(C). However, section 1129(a)(9)(C) applies only to unsecured claims. Therefore, the risk of default on such debt is substantial. The risk present in the instant case is much less significant. As the DeSarnos note, the County and School District “are at very low risk of not receiving payment while enjoying a correspondingly high quality of security in the event of default under the Plan. The taxing bodies both enjoy priority status as creditors of the Debtors and are first in line to receive the amounts owed due to their position of possessing a statutory lien upon the Debtors’ residence.” DeSarno Brief at 24. Therefore, it is not necessary to refine our approach to account for the particular characteristics of each debtor.
I recognize that the prime rate approach, which reflects transactions between commercial lenders and borrowers, is not a perfect fit for government creditors. As noted supra, the costs of borrowing for a municipal government and for a commercial lender are not identical, both with regard to their “replacement costs” — i.e., the rate at which they can borrow funds — and “transaction costs.” In addition, the market rate reflects the profit margin that motivates commercial lenders in the first place, but that is not a consideration for municipalities.
While the commercial market rate of interest for a low-risk, secured loan is not a perfectly accurate measure, exactitude is not the only consideration — judicial economy and efficiency are also important factors, especially in matters involving high volume and relatively low amounts. Numerous courts, including this one, have recognized “the importance of minimizing the expense of getting a chapter 13 plan formulated and approved,” Jones, 999 F.2d at 70, and therefore *1134 devising a formula that is relatively easy to compute. I believe that the approach I suggest here strikes the best balance between these two priorities and satisfactorily addresses our various other concerns as well.[3]

. The Majority cites a 1942 Supreme Court case, Meilink v. Unemployment Reserves Commission, 314 U.S. 564, 62 S.Ct. 389, 86 L.Ed. 458 (1942), to suggest otherwise. Meilink, however, did not involve a secured debtor, see id. at 567, 62 S.Ct. at 391 (describing taxpayers as "a poor credit risk"), and is therefore clearly not applicable to the facts of this case.

. The Plaintiffs cite three cases in support of their argument that we should adopt the statutory rate as the appropriate rate: In re Camino Real Landscape Maintenance Contractors, Inc., supra; United States v. Neal Pharmacal Co., 789 F.2d 1283 (8th Cir.1986); Matter of Southern States Motor Inns, Inc., 709 F.2d 647 (11th Cir.1983). Clm. Brf. at 31-33. Ironically, however, these three cases all adopted a "present market value” approach. To the extent that they did refer to the statutory rate, the rate they referred to was a federal rate calculated on a biennial basis to account for changes in interest rates in the market, not a rate left unchanged for over ten years.

. Furthermore, to the extent that the prime rate, like the municipal bond rates, is easily ascertainable from financial publications, I would agree with the district court that the bankruptcy court could take judicial notice of the applicable rate, and that it would need not hold hearings now to determine what that rate is.