**In re Anthony LIUZZO, Debtor.**

**Bankruptcy No. 92–00199.**

United States Bankruptcy Court,
N.D. Florida,
Gainesville Division.

Nov. 14, 1996.

Paul Orshan, Miami, FL, for Debtor.

Lisa Cohen, Gainesville, FL, for Alachua Cnty.

## *MEMORANDUM OF OPINION*

LEWIS M. KILLIAN, Jr., Bankruptcy Judge.

THIS MATTER is before the court on the Debtor's Objection to Claim of Alachua County Tax Collector and Motion for Determination of Amount of Unpaid Taxes. The objection was heard on October 2, 1996. During the hearing, I ruled that the Debtor had failed to satisfy his burden of overcoming the presumptive correctiveness of property appraiser's assessment on the property in question. The remaining issue relates to the appropriate rate of interest to be paid on the taxes due. This opinion supplements the oral ruling made in open court and further deals with the question of interest on the taxes. This constitutes findings of fact and conclusions of law in accordance with Federal Rules of Bankruptcy Procedure 7052.

### Findings of Fact

The pertinent facts related to this objection are not in dispute. The property covered by the Alachua County Tax Collector's ("the Tax Collector") claim consists of apartment units owned by the Debtor in the Vizca-

ya Apartments in Gainesville, Florida. The complex consists of 146 units of which the Debtor owns 96 units, JonTon, Inc. owns 22 units, Joseph Liuzzo owns 10 units and various other individuals own 18 units. The split in ownership of the apartment units is explained by the fact that on June 12, 1981, a Declaration of Condominium of Vizcaya Condominium was recorded in the Public Records of Alachua County, Florida, thus making the Vizcaya Apartments a condominium complex. The complex remained as condominiums until March 2, 1993, when a Voluntary Termination of Condominium of Vizcaya Condominium was recorded, effective as of December 31, 1992.

Since 1989, the Debtor has failed to pay real property taxes on the Vizcaya complex. This Chapter 11 case was filed on April 30, 1992, and on July 26, 1995, the Debtor filed the instant objection to the Tax Collector's claim and a motion pursuant to 11 U.S.C. § 505 for a determination of the total claim of the Tax Collector for property taxes for the years of 1989 through 1994. The Tax Collector sold tax certificates for the property taxes which were due in 1989 and 1990, but has not sold tax certificates for any other year.

During each of the years 1989 through 1992, during which Vizcaya Apartments consisted of a collection of condominium units, the property appraiser assessed each unit as an individual parcel, plus a proportional share of ownership in the common areas. Thus, the total assessed value of all units from 1989 through 1991 was $4,046,000.00. In 1992, the Vizcaya property was assessed downward to $3,266,000.00. For the year 1993, following the termination of the condominium status, the complex was assessed at $2,792,500.00. In 1994, the assessment was $2,814,900.00. According to the testimony of the property appraiser, Ed Crapo, the 1993 and 1994 assessments were based on the income of the complex. In those years, the tax assessor utilized the actual income and expense figures provided by the Debtor, and appraised the property using the income approach to valuation.

## Conclusions of Law

### A. Property Assessment

The Debtor, in his objection to claim and motion to determine taxes, challenges the amount of the property taxes based on a claim that the assessments are excessive. This assertion is based on two theories. First, the Debtor asserts that during the years 1989 through 1992, the Vizcaya complex should have been assessed as a single unit apartment complex instead of being assessed as individual condominium units. This position is based in large part on a letter from Ed Crapo to the Debtor in which the property appraiser admits that the highest and best use of the property for those years should have been as an apartment complex, notwithstanding the fact that Vizcaya existed as a condominium complex. The second basis for the Debtor's allegation of over assessment is that in assessing the complex for the years 1989 through 1992, the property appraiser did not obtain and review income information from the complex.

A bankruptcy court faced with a motion under 11 U.S.C. § 505 challenging the assessment of a debtor's property by a local property appraiser must determine that value consistent with state law principles since the valuation is merely part and parcel of the adjudication of the tax due and owing, a question controlled by state law. *In re Fairchild Aircraft Corp.*, 124 B.R. 488 (Bankr. W.D.Tex.1991); *In re Building Technologies Corp.*, 167 B.R. 853 (Bankr.S.D.Ohio 1994). Thus, I am bound to follow the law of Florida in determining the instant challenge to the property taxes.

In Florida, tax assessors are constitutional officers whose actions are clothed with a presumption of correctness. One challenging the assessment of the tax assessor must prove that every reasonable hypothesis has been excluded which would support the tax assessor. *Powell v. Kelly*, 223 So.2d 305 (Fla.1969), *Straughn v. Tuck*, 354 So.2d 368 (Fla.1978). Pursuant to Florida Statute § 193.011, the tax assessor is required to consider all of the following eight factors in arriving at the valuation of property for tax purposes:

(1) The present cash value of the property;

(2) The highest and best use to which the property can be expected to be put in the immediate future and the present use of the property;

(3) The location of said property;

(4) The quantity or size of said property;

(5) The cost of said property and present replacement value of any improvements thereon;

(6) The condition of said property;

(7) The income from said property; and

(8) The net proceeds of the sale of the property, as received by the seller, after deduction of all the useable and reasonable fees and costs of the sale, including the costs and expenses of financing.

The failure of the tax assessor to consider any of the listed elements necessitates the setting aside of the evaluation. *Straughn v. Tuck*, 354 So.2d at 371; *Lanier v. Walt Disney World*, 316 So.2d 59 (Fla. 4th DCA 1975), *cert. denied*, 330 So.2d 19 (Fla.1976).

■ Here the Debtor claims that even though the Vizcaya Apartments was a condominium complex, since, by the property appraiser's own admission the best use of the property during the years 1989 through 1992 would have been as an apartment complex, the property appraiser was wrong in appraising the complex as condominiums. This position is not supported by the law. In *Straughn v. Tuck*, the court held that where the tax assessor failed to consider the present use of property in making a determination of the highest and best use, but rather valued it by subjective standards using speculative factors, the assessment was overturned. Likewise, in *Miami Atlantic Corp. v. Blake*, 334 So.2d 29, 30 (Fla. 3rd DCA 1975), *cert. denied*, 336 So.2d 602 (Fla.1975), the court stated that "the assessment must be made on the basis of the actual use, or any immediate expected use to which the property is designed to be put during the expected tax year." Thus, since the property was in fact a condominium during the period of 1989 through 1992, the property appraiser was required to appraise the property in accordance with Florida Statutes § 718.120, which requires the taxes to be assessed against individual condominium parcels and not the property as a whole. Thus, the methodology of appraising the Vizcaya complex based on the individual units is not improper.

■ Secondly, the Debtor claims that by failing to review income data from the complex, the property appraiser failed to consider factor # 7, the income from the property. However, the testimony of the property appraiser reflects that while he considered the factor of the income from said property, he did not utilize the income approach to valuation, and therefore, there was no need to review the income date from the complex. As previously noted, Florida law requires the assessor to consider but not necessarily use each of the factors set forth in § 193.011. The method of valuation and the weight to be given each factor is left to the discretion of the assessor and his determination will not be overturned as long as each factor has been considered. *Valencia Center, Inc. v. Bystrom*, 543 So.2d 214 (Fla.1989). The Debtor offered no proof that in appraising condominium units, the tax appraiser must or even should utilize the income approach to valuation.

Based on the foregoing, it is clear that the Debtor has failed to present sufficient proof to overcome the presumption of correctness of the assessment and has not proven that every reasonable hypothesis to support the assessment has been excluded. Accordingly, the assessments shall be allowed to stand.

*B. Interest*

Having determined the correctness of the assessment, I now turn my attention to determining the appropriate interest rate to be applied to the Tax Collector's nonconsensual oversecured tax claim. The Tax Collector sold tax certificates for tax years 1989 and 1990. The parties are in agreement that the appropriate interest rates to be applied to these years are the actual rates bid by the certificate holders. Thus, the issue to be determined is the proper interest rate to be applied to the Tax Collector's claim for prepetition taxes, during the pre-petition and post-petition, pre-confirmation periods, and post-petition taxes, during the post-petition,

pre-confirmation period, for the tax years for which tax certificates have not been sold. This opinion does not address the issue of the proper interest rate to be applied to the Tax Collector's claim under the Debtor's plan of reorganization.

■■■■ Generally, interest stops accruing on pre-petition claims upon the filing of bankruptcy. However, § 506(b) of the Bankruptcy Code provides an exception to this rule when the value of the collateral exceeds the principal and interest due on a claim. 11 U.S.C. § 506(b) (1994). Section 506(b) provides, in part:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

11 U.S.C. § 506(b) (1994). In *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989), the Supreme Court held that oversecured nonconsensual creditors are entitled to post-petition interest under § 506(b). However, *Ron Pair* does not address the issue of what interest rate should be applied to a nonconsensual oversecured tax claim under § 506(b). An examination of existing case law provides that nonconsensual oversecured tax creditors should receive the interest rate dictated by the statutes under which their liens arise, unless either the statutory interest rate is a penalty or the application of the statutory rate would lead to an inequitable or unconscionable result. *In re Laymon*, 958 F.2d 72 (5th Cir.1992) *reh'g denied, reh'g en banc denied, cert. denied*, 506 U.S. 917, 113 S.Ct. 328, 121 L.Ed.2d 247 (1992) (holding that the appropriate post-petition interest rate must be determined by examining the equities involved in a particular case); *Galveston Indep. School D. v. Heartland Fed. S & L*, 159 B.R. 198 (S.D.Tex.1993) (holding that nonconsensual oversecured creditor shall receive the statutory rate of interest unless it can be characterized as a penalty); *Wasserman v. City of Cambridge*, 151 B.R. 4

(D.Mass.1993) (finding that the post-petition interest rate for oversecured tax claims must be determined according to the equities of each case); *In re DeMaggio*, 175 B.R. 144 (Bankr.D.N.H.1994) (holding that state property tax liens are not entitled to the state's statutory interest rate as a matter of law, rather the appropriate rate of interest is determined by the equities of each case); *In re Davison*, 106 B.R. 1021 (Bankr.D.Neb. 1989) (holding that nonconsensual oversecured tax claim is entitled to the statutory rate of interest unless the statutory rate constitutes a penalty).

■■■■ Florida Statute § 197.172 sets forth the interest rate at which delinquent real estate taxes accrue, and provides in part:

> 197.172 Interest rate; calculation and minimum
>
> (1) Real property taxes shall bear interest at the rate of 18 percent per year from the date of delinquency until a tax certificate is sold, except that the minimum charge for delinquent taxes paid prior to the sale of a tax certificate shall be 3 percent.
>
> (2) The maximum rate of interest on a tax certificate shall be 18 percent a year; however, a tax certificate shall not bear interest nor shall the mandatory charge as provided by s. 197.472(2) be levied during the 60–day period of time from the date of delinquency, except the 3 percent mandatory charge under subsection (1)....
>
> . . . . .
>
> (4) Except as provided in s. 197.262 with regard to deferred payment tax certificates, interest to be accrued pursuant to this chapter shall be calculated monthly from the first day of each month.

Florida Statute § 197.172 (1995). The Tax Collector states that it is entitled to the statutory rate of interest provided in § 197.172. The Debtor argues that the statutory interest rate provided in § 197.172 constitutes a penalty, and thus, should not be applied to the Tax Collector's claim. The Debtor points out that the mortgages on the Vizcaya Apartments have interest rates of 5 percent and 8 percent, and argues that the Tax Collector should not be entitled to a

higher interest rate than what could be obtained in the capital markets.

Several courts which have considered whether statutory rates of interest constitute true interest or provide for a penalty have determined that statutory rates of interest do not constitute a penalty. *Galveston Indep. School D.,* 159 B.R. at 204 (finding that a 12 percent per annum statutory interest rate on a delinquent tax lien can be characterized as true interest rather than as a penalty); *In re Davison,* 106 B.R. at 1022 (awarding County its 14 percent per annum statutory rate on delinquent tax lien); *In re Eastern Steel Barrel Corp.,* 164 B.R. 477, 481 (Bankr.D.N.J.1994) (allowing township the statutory rate set out in New Jersey statute); *cf. Meilink v. Unemployment Reserves Comm'n,* 314 U.S. 564, 567, 62 S.Ct. 389, 391, 86 L.Ed. 458 (1942) (finding that a 12 percent per annum statutory delinquency fee was not a penalty given the credit risk the debtor posed). However, in *In re Koger Properties, Inc.,* 172 B.R. 351 (Bankr.M.D.Fla.1994), the court held that the 18 percent statutory rate of interest set forth in Florida Statute § 197.172 is in the nature of a penalty. The *Koger* court stated that "[a]lthough the City contends that the purpose of the 18% interest rate mandated by the Florida Statute is to compensate the local government for the loss of use of the funds, it is clear that had the local government had the money, it could not invest it for an 18% return." As a result, the *Koger* court held the statutory interest rate to be in the nature of a penalty and applied the current market interest rate [1] of 8½ percent as the appropriate rate of interest to be applied upon the delinquent tax claim.

I decline to adopt the *Koger* analysis for the following reasons. First, the 18 percent statutory interest rate may appear high on its face when compared to current mortgage interest rates. However, this is not a typical real estate loan because title insurance, hazard insurance, and other lender protections, which are included in standard mortgage agreements, are lacking in this case. Also, standard mortgage agreements provide that creditors are entitled to all collection fees and costs as part of the obligation secured by the mortgage. The Tax Collector does not receive these benefits under Florida law. Such costs are, therefore, borne by the taxpayers. Thus, current mortgage interest rates are not a reliable benchmark from which I can determine if the statutory rate constitutes a penalty. Further, the statutory rate is not high relative to consumer loan transactions with similar risk of non-payment, given the Debtor's history of non-payment of taxes over a period of several years. Additionally, the Tax Collector sold tax certificates for taxes owed in 1989 and 1990 prior to the commencement of the Debtor's chapter 11 case in 1992. These tax certificates were sold in a competitive bidding process which resulted in "market" interest rates ranging from 10 percent to 16 percent. Thus, the statutory rate is not so excessive, when compared to the market rates of interest for tax certificates, as to require a finding that it is penal in nature. Finally, the Debtor has not presented any evidence, in the form of state case law, legislative history or otherwise, which supports his position that the statutory rate of interest provided in § 197.172 is in the nature of a penalty. Having considered all of the above, I can not find that the statutory rate of interest provided in § 197.172 constitutes a penalty with regard to either the pre-petition taxes or the post-petition taxes.

Even though the statutory rate of interest is not a penalty, it can be disregarded if its application would lead to an inequitable result. *E.g. In re Laymon,* 958 F.2d at 75. The Debtor argues that the equities of this case support a determination that the Tax Collector is entitled to either no interest or interest accrued at a lesser rate of interest than the statutory rate. The basis for the Debtor's argument is that the Vizcaya Apartments has been singled out for disparate treatment in that 1) it is the only apartment complex in the same general area which has had its assessment changed since 1989, and 2) the assessments per square foot for Vizca-

---

**1.** The *Koger* court does not state from which "market" it obtained 8½ percent as the best mea-
sure of "current market interest rates."

ya Apartments has historically been higher than the assessments for comparable apartment complexes. As discussed above, the Debtor has produced no evidence which proves that the Vizcaya Apartments has been singled out for disparate treatment. The complex was properly assessed as a condominium. Further, the Debtor states that if the Vizcaya Apartments had not been singled out for disparate treatment, the property taxes would have been timely paid. However, at trial the Debtor stated that he did not challenge the assessments prior to bankruptcy because he was not aware of the alleged disparate treatment until after he filed his chapter 11 case. These two statements are irreconcilable. Thus, I do not find that the Debtor was treated inequitably by the Tax Collector.

There is also authority for the proposition that the statutory rate should be disregarded if it inequitably violates a debtor's fresh start. *In re Wasserman*, 151 B.R. at 6. In *Wasserman*, the court stated that the post-petition interest rate should be tailored "so that creditors are protected but not enriched by an undeserved windfall and so that debtors are held to their obligations but denied the dispensation they are entitled to in bankruptcy." *Id.* Any possible inequity which could accrue due to the application of the statutory rate of interest could easily have been prevented by the Debtor. At the time of filing his chapter 11 case, the Debtor claimed $1,312,000.00 in annuities as exempt property[2]. These assets could have been used to pay the delinquent taxes and the other taxes as they came due. However, the Debtor apparently chose not to do so. Thus, the application of the statutory rate would not lead to an inequitable result for the Debtor.

The statutory rate of interest, even though not a penalty, can be disregarded if its application would lead to an inequitable result for

unsecured creditors. *In re DeMaggio*, 175 B.R. at 144; *In re Wasserman*, 151 B.R. at 4. In both *DeMaggio* and *Wasserman* the issue was the appropriate post-petition interest rate to apply to delinquent real estate tax claims. In each case the nonconsensual oversecured creditor claimed it was entitled to the statutory rate while the debtor claimed that the federal judgment interest rate was more appropriate.[3] In both cases, the application of the statutory rate of interest would have resulted in no distribution or limited distribution to unsecured creditors. As a result, both courts held that the equities of the cases required the application of the federal judgment interest rate rather than the statutory interest rate. This case is easily distinguishable from the above mentioned cases. In this case, the Debtor presented no evidence that unsecured creditors, or any other class of creditors, would receive less under his plan of reorganization if the statutory interest rate is applied to the Tax Collector's claim.[4] Thus, the equities of this case allow the application of the statutory interest rate.

### C. Conclusion

The Debtor failed to present sufficient evidence to overcome the presumption of correctness of the assessment, nor did he prove that every reasonable hypothesis to support the assessment has been excluded. Further, the interest rate provided in § 197.172 does not constitute a penalty and its application would not lead to an inequitable result. Accordingly, the Debtor's objection to the claim of the Alachua County Tax Collector is overruled. A separate order shall be entered in accordance herewith.

---

**2.** Debtor's Schedule C listed as exempt property a residence valued at $165,000.00, two annuities valued at $1,312,000.00, $1,000.00 of personal property, and a life insurance policy of unknown value.

**3.** In *In re DeMaggio*, 175 B.R. at 149, the statutory rate was 18 percent. In *In re Wasserman*, 151 B.R. at 6, the statutory rate was 16 percent.

**4.** This should not be read to mean that if unsecured creditors are prejudiced by the application of the statutory interest rate, then an alternative interest rate will automatically be applied. Rather, this is one factor to be considered when weighing the equities of a case.