**In re TWO SPRINGS MEMBERSHIP CLUB, Debtor.**

**Elaine Greaves, Trustee, Plaintiff,**

**v.**

**Office of the Delaware Attorney General, et al., Defendants.**

**Bankruptcy No. 04–44837.
Adversary No. 06–4112.**

United States Bankruptcy Court, N.D. Ohio.

Jan. 13, 2010.

Andrew W. Suhar, Suhar & Macejko, LLC, Youngstown, OH, for Plaintiff.

Douglas Snoeyenbos, U.S. Justice Dept., Washington, DC, Michael Gallo, Nadler Nadler & Burdman Co., LPA, Youngstown, OH, Martha E. Romero, Whittier, CA, for Defendants.

## MEMORANDUM OPINION REGARDING (i) UNITED STATES' MOTION FOR LEAVE TO AMEND ANSWER AND ASSERT CROSSCLAIM; AND (ii) JUDGMENT ORDER WITH REGARD TO VALIDITY, PRIORITY AND EXTENT OF LIEN OF RIVERSIDE COUNTY, CALIFORNIA

KAY WOODS, Bankruptcy Judge.

This matter is before the Court upon remand by the United States District Court for the Northern District of Ohio ("District Court"), after the District Court vacated two orders of this Court pursuant to Memorandum Opinion and Order ("District Court Order") (Doc. #186) dated September 21, 2009.

## I. PROCEDURAL BACKGROUND

On June 1, 2006, Chapter 7 Trustee, Elaine Greaves ("Trustee"), commenced this adversary proceeding against various defendants, including the United States of America, Internal Revenue Service ("Government"), and Riverside County, California and the Riverside County Treasurer (collectively, "Riverside"). The Complaint (Doc. #1) sought a determination regarding the validity, priority and extent of all liens against the proceeds of sale ("Sale Proceeds") of certain real estate previously sold by the Trustee in North Palm Springs, California ("Campground").

The Government filed United States' Answer ("Government's Answer") (Doc. #8) on June 27, 2006. Riverside filed Answer to Complaint to Determine Validity, Priority and Extent of Liens and Determination of Income [sic] Liability by Secured Creditor County of Riverside and Riverside County Treasurer, California ("Riverside's Answer") (Doc. #52) on April 2, 2008. On November 14, 2008, Riverside filed Motion to Deem Answer to Plaintiff's Complaint Timely Filed Filed [sic] by Secured Creditor County of Riverside and Riverside County Treasurer, California (Unopposed by Trustee) ("Motion to Deem Answer Timely") (Doc. #124). No party filed a response or objection to the Motion to Deem Answer Timely. On December 2, 2008, the Court entered Order on Motion to Deem Answer to Plaintiff's Complaint Timely Filed by Secured Creditor County of Riverside and Riverside County Treasurer, California (Doc. #139).

On October 9, 2008, the Government filed United States [sic] Motion for Leave to Amend Answer and Assert Crossclaim ("Motion for Leave") (Doc. #113), which sought leave to amend the Government's Answer to assert a crossclaim against Riverside to subordinate a portion of the interest component of Riverside's lien. No party filed a response or objection to the Motion for Leave.

The Court held a telephonic hearing on the Motion for Leave on November 6, 2008, after which the Court entered Order Denying Motion to Amend Answer and Assert Crossclaim ("Denial Order") (Doc. #120) on November 12, 2008. The Denial

Order was based on the "posture and age of this case" and the Government's six month delay in filing the Motion for Leave. The Government appealed the Denial Order to the District Court.

On November 6, 2008, this Court entered Judgment Order with Regard to Riverside County, California/Riverside County Treasurer ("Judgment Order") (Doc. # 118), which allowed Riverside a first priority lien in the amount of $303,191.70 for undisputed real estate taxes. The Judgment Order was (i) submitted by counsel for Trustee; (ii) stipulated, agreed and approved by counsel for Riverside; (iii) submitted without objection by Camp Coast to Coast and Affinity Group ("Coast"); and (iv) objected to by the Government. The Government did not file a written objection to the Judgment Order, but based its objection ("Objection") on the same grounds it set forth in the Motion for Leave, which asserted that a portion of the interest component of Riverside's lien should be subordinated. In entering the Judgment Order, this Court overruled the Government's Objection without explanation.

The Government appealed the Judgment Order to the District Court; such appeal was consolidated with the Government's appeal of the Denial Order.

On September 21, 2009, the District Court vacated the Denial Order and the Judgment Order. The District Court found that the Denial Order was an abuse of discretion because, although delay is one factor that can be considered in ruling on a motion for leave to amend, delay alone is not a sufficient reason to deny such motion. As a consequence, the District Court remanded the Motion for Leave to this Court for further consideration and application of the factors enunciated by the Supreme Court in *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).[1] The Judgment Order, which was vacated because it failed to provide any basis for meaningful review, was remanded for the Court to "clearly state its reasons for overruling [the Government's] objections to the Judgment Order." (District Court Order at 12.)

While the Government's appeals of the Denial Order and the Judgment Order were pending, this Court held a trial on February 23, 2009, to resolve the dispute between the Government and Coast, each of which claimed a priority security interest in the Sale Proceeds. On April 9, 2009, the Court entered Memorandum Opinion Regarding Trial (Doc. # 165) and Order Regarding Trial (Doc. # 166) (collectively, "Trial Judgment"), which held: (i) the Government's federal tax assessment against Revcon Nevada[2] in the amount of $59,828.50 was a valid secured claim against the Sale Proceeds; (ii) the Government's tax assessments against All Seasons, Travel America, and Revcon California were not valid claims against the Sale Proceeds; and (iii) Coast's claim for $3,880,038.54 based on a judgment lien against Revcon Nevada was an unsecured claim against Debtor's estate. On April 17, 2009, the Government filed United States' Motion to Alter or Amend Under Bankruptcy Rule 9023 ("Motion to

---

1. The United States Supreme Court identified the following factors to consider in ruling on a motion for leave to amend: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment." *Foman v. Davis*, 371 U.S. at 182, 83 S.Ct. 227.

2. Entities that were defined in the Trial Judgment will be referred to herein by the same designations.

Amend") (Doc. # 168). The Court held a hearing on the Motion to Amend on May 1, 2009. Thereafter, on May 5, 2009, the Court entered Memorandum Opinion Regarding United States' Motion to Alter or Amend Under Bankruptcy Rule 9023 (Doc. # 174) and Order Denying United States' Motion to Alter or Amend Under Bankruptcy Rule 9023 (Doc. # 175) (collectively, "Reconsideration Order"). The Government appealed the Trial Judgment and Reconsideration Order to the extent the Court determined that assessments in the name of Travel America are not valid claims against Debtor. The Government did not appeal this Court's determination regarding the Government's failure to establish that All Seasons and Revcon California were alter egos of Debtor.[3] The Government's appeals of a portion of the Trial Judgment and Reconsideration Order remain pending.

Because the Court determined the Government failed to establish that Debtor was the alter ego of various entities (*i.e.,* All Seasons, Travel America and Revcon California), the Government has a secured claim only in the amount of $59,828.50 for the tax assessment against Revcon Nevada. Based upon the Status Report (Doc. # 195) filed by Trustee, the Sales Proceeds are sufficient to pay the Government's allowed secured claim in full even in the absence of subordination. Given the current status of the Government's secured claim, there does not appear to be any reason to grant the Government's Motion for Leave and permit it to assert a cross-

claim against Riverside for subordination. However, the Court is mindful that the Government has appealed a portion of the Trial Judgment, which determined the merits of the Government's secured status.[4]

Accordingly, this Court entered Order dated September 29, 2009 ("September 29 Order") (Doc. # 187), which ordered the parties to file various documents so the Court could rule on the Motion to Amend and the Government's Objection to the Judgment Order. In lieu of filing a written objection, as directed by the Court, on October 9, 2009, the Government filed Motion to Stay (Doc. # 191). The Court held a telephonic hearing on the Motion to Stay, at which time the Government acknowledged that, if the District Court affirmed this Court's Trial Judgment, the Government would likely appeal to the Sixth Circuit Court of Appeals. As a consequence, based upon the indefinite nature of the stay requested by the Government and the likelihood that such stay, if imposed, would continue for a couple of years, the Court entered Order Denying Motion to Stay Further Proceedings (Doc. # 192) on October 20, 2009.

Thereafter, the Government filed United States' Written Objection to Judgment Order ("Written Objection") (Doc. # 193) on October 20, 2009. Trustee filed Motion for Leave to File Status Report *Instanter* (Doc. # 195) on November 6, 2009, which sought leave to file the status report that had been due on October 20, 2009. On

---

**3.** The Government has apparently abandoned a substantial part of its alter ego argument on appeal. *See* United States' Motion to Stay Further Proceedings with Regard to the United States' Motion to Amend and its Objection to the Distribution to Riverside County, until the District Court Rules in the Pending Appeal (Because Affirmance Would Cause the United States to Withdraw its Objection to

That Distribution) ("Motion to Stay") (Doc. # 191) filed by the Government on October 9, 2009.

**4.** Despite abandonment by the Government of its argument that All Seasons and Revcon California are alter egos of Debtor, tax assessments against Travel America exceed the total amount of the Sale Proceeds.

November 6, 2009, the Court entered Order Authorizing the Filing of the Status Report *Instanter* (Doc. # 196). The Status Report states that: (i) as of November 5, 2009, Trustee holds $530,671.71 as property of the estate; (ii) Trustee estimates administrative expenses to be $150,000.00; (iii) Trustee estimates net proceeds available to creditors to be $380,671.71; and (iv) Trustee has paid all costs associated with the sale of estate assets, including payment to Riverside in the amount of $303,191.70 ("Riverside Payment").

On November 10, 2009, Trustee filed Response to United States' Written Objection to Judgment Order ("Trustee's Response") (Doc. # 199). Also on November 10, 2009, Riverside filed County of Riverside's Response to United States' Written Objection to Judgment Order and Response to the Motion for Leave to Amend Answer and Assert Cross Claim ("Riverside's Response") (Doc. # 200). The following day, Riverside filed Exhibit A to Riverside's Response (Doc. # 201).

As scheduled in the September 29 Order, the Court held a telephonic hearing on December 7, 2009, at which Andrew W. Suhar, Esq. represented Trustee, Martha Romero, Esq. represented Riverside, and Douglas Snoeyenbos, Esq. represented the Government. The Court expressed frustration with the Government's failure to comply with the September 29 Order. According to the Written Objection, although the Government sought to subordinate only a portion of the interest component of Riverside's tax lien, there was no amount of Riverside's real estate tax lien to which the Government did not object. Furthermore, the Government's Written Objection was internally inconsistent and at odds with the Motion to Amend. Accordingly, the Court directed the Government to supplement the Written Objection. The Court granted the Government's request for three weeks to file the supplement.[5] On December 22, 2009, the Government filed United States' Supplement to Written Objection to Judgment Order ("Supplement") (Doc. # 205).

## II. DOES SUBORDINATION APPLY UNDER THE CIRCUMSTANCES?

▇▇▇ The Government objects that "Riverside has never filed a proof of claim under § 501 and Bankruptcy Rule 3001, or otherwise formally set forth the total amount that it is claiming in this proceeding." (Written Obj. at 2–3.) The Government postulates that "Riverside should be required to file a claim in order to obtain a distribution from the estate. If Riverside were to file a claim, then the [Government] would file an objection...." (*Id.* at 3, n. 2.) The Government argues that a portion of the interest charged by Riverside on the delinquent real estate taxes relating to the Campground is a non-pecuniary loss penalty within the meaning of 11 U.S.C. § 726(a)(4).

The Government's argument is fatally flawed because it fails to distinguish between distribution by Trustee from estate property to claimants against the estate and payment of liens that were transferred to the Sale Proceeds. Section 726 is captioned "Distribution of property of the estate" and sets forth the order of priority for distribution of property of the estate. On October 24, 2005, this Court entered Order Authorizing Sale of Property Free and Clear of All Liens, Encumbrances, Claims and Other Interests ("Sale Order") (Main Case Doc. # 75), which provided:

---

5. The Government was directed to file a supplement to the Written Objection no later than December 28, 2009. The Court further directed the other parties not to file a response to the supplement absent further order of the Court.

5. Pursuant to 11 U.S.C. § 363(f), the Trustee is authorized to transfer title in and to the Property to the Buyer, and the Property shall be sold, and upon the closing date shall be, free and clear of all liens, encumbrances, claims and other interests of any kind or nature (a true copy of the Amended Preliminary Report is attached hereto as Exhibit "A") (collectively, the "Encumbrances"). All such Encumbrances shall attach to the net proceeds of the Property after the Trustee's payment of authorized expenses as set forth in paragraph 4, above, in the same validity, priority and extent that the Encumbrances exist against the Property pre-petition.

(Sale Order at 6.)

Riverside was not required to file a proof of claim against Debtor's estate because the Debtor had no personal liability for real estate taxes assessed against the Campground. As set forth in Riverside's Answer (Doc. # 52), the real estate taxes on the Campground are *in rem* and payable only through the Sale Proceeds. (Riverside's Answer, ¶ 7.) As a consequence, Riverside did not and does not have a claim against the Debtor, but only a lien against the Sale Proceeds. If Riverside had filed a secured proof of claim against Debtor's bankruptcy estate, such claim would have been properly subject to objection and disallowance. Payment to Riverside, as set forth in the Judgment Order, was based upon Riverside's lien for unpaid real estate taxes being a defined "Encumbrance" and attaching to the Sale Proceeds. The Government does not dispute that Riverside has a valid first priority lien in the amount of at least $175,937.84.

(Supp. at 1.) The only objection raised by the Government deals with the "extent" of Riverside's lien as it relates to interest based on delinquent real estate taxes.

This Court holds that § 726 is not applicable to satisfaction of Encumbrances from the Sale Proceeds, as set forth in the Sale Order. Only allowed Encumbrances can be paid from the Sale Proceeds.[6] None of the kinds of claims enumerated in § 726 are applicable to liens and other encumbrances that attach to proceeds of sale.

The Government's argument is similar to one that was rejected in *Rice v. United States (In re Odom Antennas, Inc.)*, 258 B.R. 376 (Bankr.E.D.Ark.2001), *aff'd, Holloway v. IRS (In re Odom Antennas, Inc.)*, 340 F.3d 705 (8th Cir.2003). In *Rice v. United States,* the trustee sold certain real property and filed an adversary proceeding—similar to the instant case—seeking a determination regarding the priority, extent and validity of liens against the sale proceeds. Secured creditors moved for partial summary judgment, seeking, among other things, to subordinate certain punitive damages and pre-petition tax penalties. The bankruptcy court found that 11 U.S.C. § 726 was not applicable to satisfaction of liens, as opposed to distribution of estate property. The court stated:

[D]istribution of property of the estate under § 726(a) occurs after the trustee has disposed of "any property in which an entity other than the estate has an interest, such as a lien, and that has not been disposed of under another section of this title." 11 U.S.C. § 725. In other words, § 726 deals with the final distribution of assets of the estate. A leading treatise states the distribution scheme succinctly:

**6.** If the Sale Proceeds exceed the total amount of Encumbrances, then Trustee would distribute the remainder of such proceeds as

property of the estate pursuant to 11 U.S.C. § 726.

A secured claim by its very nature is entitled to be paid in full out of the proceeds of the collateral that secures it ... before any of those proceeds may be used to pay unsecured claims. This principle is recognized in Section 725. The liquidation proceeds that are available for unsecured creditors (including both the proceeds of collateral remaining after the satisfaction of valid liens and the proceeds of free assets of the estate) are then distributed in accordance with Section 726.

GEORGE M. TREISTER ET AL., FUNDAMENTALS OF BANKRUPTCY LAW 289 (A.L.I.2d ed.1991). Because there are no remaining funds in the estate to be distributed to unsecured creditors, § 726 is not applicable to this proceeding.

*Rice v. United States*, 258 B.R. at 385. In affirming the bankruptcy court, the Eighth Circuit Court of Appeals held that, "Taken together, sections 724(a) and 726(a)(4) allow the trustee, not a third party, to avoid a lien to the extent the lien secures the claim for a penalty or for punitive damages." *Holloway v. IRS*, 340 F.3d at 708.

The Sixth Circuit Court of Appeals concurs that 11 U.S.C. § 726 does not apply to distribution to lien holders, but applies only to property of the estate. In *United States v. Darnell (In re Darnell)*, 834 F.2d 1263 (6th Cir.1987), the Court held:

We also find support for our result in the fact that § 724, titled "Treatment of certain liens," deals explicitly with priority and distribution problems involving property encumbered by liens. Section 726, titled "Distribution of property of the estate," by its terms mandates pro rata payment only of claims specified in § 507 and subsections (2) through (5) of § 726(a). Under § 724, property is not distributed to the estate (§ 724(b)(6)) until *all* liens, both tax and nontax, are satisfied. Therefore, *we construe § 726*

*to govern only distributions from property which has become part of the debtor's "estate."* Under this reading, the distribution scheme specified for multiple claims in a priority class which is set forth in § 726 (pro rata) has no application to distribution under § 724 since, by its terms, property distributed under that section does *not* become part of the estate unless or until all secured claims have been satisfied.

*Id.* at 1268–69 (emphasis added).

The Government has not set forth any case law to support its contention that subordination pursuant to § 726 applies to a situation like the instant one where liens are being satisfied from sale proceeds rather than distribution of general estate property. As a consequence, this Court finds and holds that the Government's argument, based on 11 U.S.C. § 726(a)(4) for subordination of a portion of the interest claimed by Riverside as part of its tax lien, is without merit.

### III. GOVERNMENT'S OBJECTION TO DISTRIBUTION TO RIVERSIDE

Notwithstanding the Court's holding, above, that § 726(a)(4) is not applicable to the current circumstances, the Court will nonetheless deal with the substance of the Government's Objection. In the Written Objection, the Government sets forth three reasons why this Court should not enter the Judgment Order, which provides for Riverside's Payment. The bases for the Government's Objection are as follows:

1. Riverside claims interest at the rate of 18% per year on delinquent real estate taxes for years 1994–96 and 2001–04. An unspecified portion of this 18% annual interest rate should be subordinated to the Government's claim because the interest rate "exceeds any reasonable com-

pensation for use of money the payment of which was more than amply secured by a senior lien." As such, this portion is a "non-pecuniary loss penalty within the meaning of 11 U.S.C. § 726(a)(4)." (Written Obj. at 4.)

2. Another portion of the Riverside Payment should be equitably subordinated to the Government's claim because Riverside received partial payments from Debtor between 1998 and 2003 in the total amount of $47,424.00, which Riverside did not apply immediately to reduce the unpaid real estate taxes, but which Riverside kept in a separate escrow account. As a consequence, additional interest accrued on these payments until Riverside applied them to the unpaid taxes.

3. Another portion of the Riverside Payment should be equitably subordinated to the Government's claim because Riverside delayed in filing Riverside's Answer to Trustee's Complaint, thereby delaying the ultimate resolution of this matter while "substantial additional 'interest' accrued on Riverside's claim." (Written Obj. at 7.)

Contrary to the September 29 Order, the Written Objection states:

As of the date of this filing, the *United States does not agree that any specific amount of Riverside's claim is a first priority secured claim against the sale proceeds.* The information currently available to the United States is not sufficient to determine that amount. In the event that the United States is allowed to take formal discovery, the United States expects to be able to determine that amount after discovery is complete. That amount is likely to begin with the principal amounts of tax due on the real property at issue for each taxable period, plus interest at a rate of no more than 6% per annum to the date of distribution, with all partial payments applied to reduce the balance on which interest accrues as of the date of each payment.

(Written Obj. at 7–8 (emphasis added).) The Government states that it selected the 6% interest rate based on its estimate of comparable commercial lending rates on over-secured loans during the time periods at issue. (*Id.* at 8, n. 5.)

However, in the Supplement, the Government now "agrees that Riverside has a valid first priority secured claim against the sale proceeds in the amount of $175,937.84." (Supp. at 1.) The Government calculates this amount by "using principal tax amounts, and dates and amounts of partial payments, that were provided by Riverside." (*Id.*) In contrast to the flat 6% interest rate proposed in the Written Objection, the Government postulates in the Supplement that non-pecuniary interest rates from 1993 to 2006 range from 5.83% to 8.38%. (Addendum to Supp.)

The Government apparently has abandoned the third prong of its Written Objection, which is that a portion of the interest rate should be subordinated because Riverside delayed in filing Riverside's Answer. The Government acknowledges in the Supplement that Riverside did not claim interest after the sale of the Campground in October 2005, thus, there is no factual basis to support this portion of the Government's Written Objection. (Supp. at 2.) The Government offers to acknowledge the priority of Riverside's interest claim through September 30, 2006, if the Court subordinates the alleged penalty portion of the interest component of Riverside's lien. (*Id.*)

## A. *RIVERSIDE'S RECEIPT OF PARTIAL PAYMENTS*

■ The Court will first address the Government's contention that a portion of the interest claimed by Riverside should be subordinated because Riverside failed to "apply partial payments to reduce the accrual of 'interest' as soon as those payments were received[.]" (Written Obj. at 6.) Riverside contends that its application of the partial payments complied with § 2636 of the California Revenue and Taxation Code ("Calif. Tax Code"). The Government asserts that although the California statute authorizes a county to refuse to accept partial payments or to accept partial payments and apply them to penalties, interest, costs and taxes due, in that order, the statute does not authorize the county to accept partial payments without crediting them. (*Id.*) Alternatively, the Government argues that "Riverside's actions in [accepting partial payments without crediting them] were so grossly inequitable that they warrant equitable subordination of a part of its resulting claim under 11 U.S.C. § 510(c)." (*Id.* at 6–7.)

The Government does not offer any case law or other interpretation regarding the California statute in the Written Objection and does not even address this argument in the Supplement. The Government merely makes the bald assertion that the timing of Riverside's application of the partial payments is so "inequitable" as to require subordination. Because the Government states that it determined the "agreed" amount of Riverside's lien by using the dates and amounts of the partial payments, the Government apparently made a unilateral determination of how the California statute can and should be interpreted and applied. (Supp. at 1.)

Riverside's Response explains that Calif. Tax Code § 2636 authorizes Riverside to accept partial tax payments only with the approval of the Board of Supervisors. Riverside states that "only the Board of Supervisors can approve the imposition of partial payments in each County. Riverside Taxing Authority has not implemented this section to accept partial payments." (Riverside Resp. at 10.) Riverside states that it applied the partial payments to the tax amounts due when enough money was received to pay a particular tax year, at which time interest on that particular tax year ceased. (*Id.* at 10–11.)

Although the Government was aware of Riverside's Response for a couple of months prior to filing the Supplement, the Government failed to flesh out its argument concerning subordination based on partial payments. The Government relies solely on its two paragraphs covering this argument in the Written Objection. These paragraphs contain no citation to case law, treatises, legislative history of the statute, or any other support for subordination based on Riverside's alleged "inequitable" application of the partial payments. The Court finds no merit to the Government's argument. Riverside has provided an explanation that only the Board of Supervisors can authorize acceptance of partial payments and that Riverside has not implemented this provision of the California statute. The Government has failed to counter this explanation in any way whatsoever. Thus, the Government is left to its one sentence argument that Riverside's conduct is so inequitable that subordination is required. Since Riverside complied with the California statute, this Court finds that Riverside's conduct was not inequitable and that subordination is not required.

## B. *DOES INTEREST ON DELINQUENT REAL ESTATE TAXES ABOVE THE 30–YEAR MORTGAGE RATE CONSTITUTE A PENALTY?*

■ The Government's second argument for subordination is that California's

18% statutory interest is punitive in nature and should be reduced to a rate consistent with the 30–year mortgage rate "because it is extremely rare for property taxes not to be collected, including through foreclosure sale if necessary, for as long as 30 years." (Supp. at 2, n. 1.) The Government's only support for urging the Court to impose the 30–year mortgage rate to Riverside's tax claim is its contention that over-secured real estate taxes are likely to be collected by the taxing authority.

This Court is not aware of—and the Government has failed to identify—any taxing authority that ties the interest imposed on delinquent real estate taxes to consensual mortgage rates. The Government's argument that interest rates on real estate taxes should track mortgage rates ignores the very real differences between real estate taxes and mortgages. Some of these differences are: A bank or mortgage company evaluates the credit worthiness of a borrower in determining the interest rate to assess. This rate is based not only on the length of the mortgage but on the amount of down payment or other equity the purchaser will have in the property as well as the credit score of the purchaser. The mortgagee usually contracts for certain remedies in the event the purchaser defaults on the note, including the authority to assess attorney's fees and costs relating to collection and/or foreclosure. The mortgage holder also usually has the right to purchase insurance on the property in the event the owner fails to do so and charge the owner for such insurance. A mortgagee usually has the right to inspect the property and to assess other fees and charges. In addition, the mortgage holder can accumulate an amount of money in escrow to pay certain costs. Companies that offer mortgages are in competition with each other and mortgage rates reflect that competition. Moreover, in the event of default, the mortgagor has personal liability on the note if the real property that secures the note is insufficient to satisfy the balance owing on the note. In contrast, a county taxing authority does not get any say in who owns the real property. The rate of interest, as well as any other fees that may be assessed, are fixed by statute, and cannot be negotiated. The property owner does not have personal liability for unpaid real property taxes; the taxing authority can look only to the real property itself for payment.

The differences between real estate taxes and mortgages support the different interest rates utilized in these vastly different situations. The Government offers no policy, case law, or other basis that supports its bald assertion that any interest above the 30–year mortgage rate should be subordinated. Instead, the Government offers only a conclusory argument that the 18% interest rate charged by Riverside is excessive and, consequently, should be subordinated.

Although the Government fails to cite any case law in support of its argument, this Court is aware of one case in which an 18% interest rate on real property taxes was held to be excessive and reduced. In *In re Koger Properties, Inc.,* 172 B.R. 351 (Bankr.M.D.Fla.1994), the bankruptcy court stated:

> This Court is satisfied that the 18% interest rate contained in the Florida Statute, which is imposed only upon a delinquency in the payment of taxes, is in fact in the nature of a penalty. Inasmuch as the loss of use of funds is better measured by the level of current market interest rates, this Court is satisfied that the appropriate rate of interest upon the tax liability claim should be 8½%.

*Id.* at 353. However, the *Koger* case has not been followed by any of the courts to

cite the case. Two years later, the bankruptcy court in the Northern District of Florida expressly declined to follow *Koger's* holding:

> I decline to adopt the *Koger* analysis for the following reasons. First, the 18 percent statutory interest rate may appear high on its face when compared to current mortgage interest rates. However, this is not a typical real estate loan because title insurance, hazard insurance, and other lender protections, which are included in standard mortgage agreements, are lacking in this case. Also, standard mortgage agreements provide that creditors are entitled to all collection fees and costs as part of the obligation secured by the mortgage. The Tax Collector does not receive these benefits under Florida law. Such costs are, therefore, borne by the taxpayers. Thus, current mortgage interest rates are not a reliable benchmark from which I can determine if the statutory rate constitutes a penalty. Further, the statutory rate is not high relative to consumer loan transactions with similar risk of non-payment, given the Debtor's history of non-payment of taxes over a period of several years.... Finally, the Debtor has not presented any evidence, in the form of state case law, legislative history or otherwise, which supports his position that the statutory rate of interest provided in § 197.172 is in the nature of a penalty. Having considered all of the above, I can not find that the statutory rate of interest ... constitutes a penalty with regard to either the pre-petition taxes or the post-petition taxes.

*In re Liuzzo*, 204 B.R. 235, 240 (Bankr. N.D.Fla.1996).

The bankruptcy court for the Middle District of Florida revisited the issue of whether the 18 percent interest rate was a penalty in *In re Cone Constructors, Inc.*, 304 B.R. 513 (Bankr.M.D.Fla.2003). In *Cone Constructors*, the bankruptcy court concluded that the Tax Collector was entitled to interest on a secured claim at the statutory rate of 18 percent per annum because "[s]uch a rate is not wholly disproportionate or excessive in relation to market risks and conditions, and no evidence has been presented to indicate that the provision was intended to penalize delinquent taxpayers, rather than compensate the taxing authority for delayed payment of the taxes." *Id.* at 518. The court adopted the rationale in *Liuzzo* and other cases and found that such rationale was "consistent with decisions in other jurisdictions," *citing In re Marfin Ready Mix Corp.*, 220 B.R. 148, at 151–52 (Bankr. E.D.N.Y.1998) ("First, while the Court is certainly not bound by the statutory label, the Court considers the label as some evidence of the character of the charge.... Lastly, the Debtor has not presented any evidence whatsoever, in the form of case law or legislative history, to support its claim that a portion of the interest rate constitutes a penalty.") and *Town of Monroe v. 837 Main Street Corp.*, 45 Conn. Supp. 283, 712 A.2d 996, 1000 (1997) ("[T]he court concludes that the interest imposed on delinquent taxes is compensatory, and not punitive in nature. The eighteen percent interest per annum was imposed primarily to ensure that municipalities receive fair compensation for delayed payment of taxes in light of fluctuating market rates, inflation, and collections costs.") *In re Cone Constructors*, 304 B.R. at 517–18.

This Court, like all other courts that have cited the *Koger* case, does not find the *Koger* rationale to be persuasive. The Government has presented no evidence (or even argument) to support its contention that California's 18% interest rate on delinquent real estate taxes is a penalty rather than compensatory interest. As set

forth above, there are good reasons for the interest rates on secured mortgages and secured real estate taxes to be different, not the least of which is that taxpayers in general bear the burden when real estate taxes are delinquent and such burden should be and can be compensated with higher interest rates.

## IV. GOVERNMENT'S MOTION FOR LEAVE

■ The Government's Motion for Leave requests leave to amend the Government's Answer to assert a cross-claim against Riverside to subordinate a portion of Riverside's lien claim to the Government's lien claim. The Motion for Leave is based on: (i) equitable subordination pursuant to 11 U.S.C. § 510(c); (ii) a portion of the interest constitutes a non-pecuniary loss penalty within the meaning of 11 U.S.C. § 726(b)(4) [sic]; (iii) Riverside failed to apply the partial payments when due, thus increasing the amount of interest on its lien claim; and (iv) Riverside delayed in filing Riverside's Answer, thus increasing the amount of interest on its lien claim.

As set forth above, the Government has now abandoned reason (iv), recognizing that Riverside did not accrue any interest on the delinquent taxes after the sale of the Campground in October 2005, thus the interest component of the lien did not increase as a result of the timing of Riverside's Answer.

Although listed as two separate reasons, there is only one basis for the Government's claim for equitable subordination, as set forth in (i) and (iii), above. The

Government's argument is based on Riverside's alleged failure to apply the partial payments when they were received by Riverside. The Government provides no other reason for its contention that a portion of the interest on Riverside's lien claim should be subordinated. As set forth above, this Court finds that Riverside complied with the California statute and, accordingly, its application of the partial payments did not constitute inequitable conduct. The Government has failed to point to any case law that supports its position for equitable subordination of a portion of the interest component of Riverside's real estate tax lien. Moreover, the Legislative History of § 510 provides as follows: "Since the House amendment authorizes subordination of claims only under principles of equitable subordination, and thus incorporates principles of existing case law, a tax claim would rarely be subordinated under this provision of the bill." 11 U.S.C. § 510 (West 2009) (Legislative History *citing* 124 Cong. Rec. H. 11095, H 11113 (Sept. 28, 1978)). As a consequence, the Government has failed to articulate any reason to support its contention that it should be allowed to assert a cross-claim against Riverside for equitable subordination under § 510(c).

Last, the Government relies on 11 U.S.C. § 726(a)(4) [7] in support of its argument that it should be allowed to file a cross-claim against Riverside for subordination. As set forth at length, above, this Court finds that § 726 does not apply to situations involving payment of secured claims from the secured collateral, as op-

---

7. The Government actually states that "[A] portion of the 18% annual interest rate claimed by Riverside exceeds any reasonable compensation for use of money subject to a senior secured lien, and is in reality a non-pecuniary [sic] loss penalty within the meaning of 11 U.S.C. § 726(b)(4)." (Mot. for Leave at 2.) Because all other references by the Government are to § 726(a)(4), this Court assumes this is a typographical error and that the Government is relying on § 726(a)(4). Because there is no § 726(b)(4), to the extent this is not a typographical error, this Court finds that the argument is meaningless.

posed to distribution of property of the bankruptcy estate. The Government has offered no support for its position to the contrary.

The District Court directed this Court to reconsider the Motion for Leave "in light of all the factors enumerated by the Supreme Court in *Foman*." (District Court Order at 10.) In *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), the Supreme Court held that leave to amend should be freely given under Federal Rule of Civil Procedure 15(a) (incorporated into these proceedings by Federal Rule of Bankruptcy Procedure 7015). However, the Supreme Court stated that before addressing factors such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." the underlaying facts asserted by the movant must support a claim for relief. *Id.* at 182, 83 S.Ct. 227. The Supreme Court held: "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Id.*

In the instant case, the Court has already addressed the merits of the Government's position in overruling the Government's Objection to the Judgment Order. The Court finds that the Government has failed to articulate any legal or factual reason to support its contention that a portion of the interest component of Riverside's tax lien should be subordinated to the Government's lien claim. As a consequence, this Court will deny the Motion for Leave, under the rationale articulated by the Supreme Court in *Foman*, that the Government has not stated any "underlying facts or circumstances relied upon by

[the Government as] a proper subject of relief." Moreover, this Court also will deny the Motion for Leave based on (i) the Government's undue delay in filing the Motion for Leave; and (ii) the futility of granting the Motion for Leave since the Government's secured claim will be paid in full absent any subordination.

## V. CONCLUSION

The Government acknowledges that, at minimum, Riverside has a valid, first priority lien in the amount of $175,937.84.

The Government's arguments for subordination are without support or merit. Section 726 applies to distribution of estate property, but this section does not apply to satisfaction of liens from secured collateral. As a consequence, 11 U.S.C. § 726(a)(4) provides no support for the Government's argument for subordination of a portion of the interest assessed by Riverside on the delinquent taxes. The Government failed to articulate any basis to support its argument for equitable subordination under 11 U.S.C. § 510(c). Because Riverside complied with the appropriate California statutes in applying the partial payments, such conduct was not inequitable. The Government provided no support for its argument that an interest rate on delinquent real estate taxes greater than the 30–year mortgage rate is excessive and constitutes a penalty. Accordingly, the Court finds no merit to the Government's Objection to the Judgment Order and will overrule such Objection.

The Motion for Leave should be denied because the Government failed to state any legal basis or other valid reason to support its claim for subordination of a portion of the interest on Riverside's real estate tax lien.

As a consequence, this Court will issue the following orders: (i) Order Denying Motion for Leave; (ii) Order providing for

distribution to Riverside on its tax lien in the undisputed amount of $175,937.84; and (iii) Order providing for distribution of the remainder of Riverside's real estate tax lien in the amount of $140,545.18 ($303,-191.70—$175,937.84 = $127,253.86 + 13,-291.32 = $140,545.18) [8]

Appropriate orders will follow.

## ORDER DENYING GOVERNMENT'S MOTION FOR LEAVE TO AMEND PLEADINGS

This cause is before the Court on United States [sic] Motion for Leave to Amend Answer and Assert Crossclaim ("Motion for Leave") (Doc. # 113) filed by the United States of America, Internal Revenue Service ("Government"), on October 9, 2008.

For the reasons stated in the Memorandum Opinion entered this date, the Court hereby denies the Motion for Leave.

## ORDER PROVIDING FOR DISTRIBUTION OF RIVERSIDE COUNTY'S UNDISPUTED FIRST PRIORITY REAL ESTATE TAX LIEN

On November 7, 2008, this Court entered Judgment Order with regard to Riverside County California/Riverside County Treasurer ("Judgment Order") (Doc. # 118), which ordered the distribution of $303,191.70 to Riverside County, California and the Riverside County Treasurer (collectively, "Riverside") to satisfy Riverside's lien for delinquent real estate taxes.

The United States of America, Internal Revenue Service ("Government") appealed entry of the Judgment Order to the United States District Court for the Northern District of Ohio ("District Court"). On September 21, 2009, the District Court vacated the Judgment Order. The Judgment Order was remanded for the Court to "clearly state its reasons for overruling [the Government's] objections to the Judgment Order."

The Government filed (i) United States' Written Objection to Judgment Order (Doc. # 193) on October 20, 2009; and (ii) United States' Supplement to Written Objection to Judgment Order ("Supplement") (Doc. # 205) on December 22, 2009.

In the Supplement, the Government agreed that "Riverside has a valid first priority secured claim" in the amount of $175,937.84.

For the reasons stated in the Memorandum Opinion entered this date, the Court hereby orders Trustee to distribute $175,937.84 ("Undisputed Lien Payment") to Riverside for the payment of Riverside's undisputed first priority real estate tax lien. To the extent Trustee has already made this distribution, the Undisputed Lien Payment is hereby ratified and confirmed.

## ORDER (i) OVERRULING GOVERNMENT'S OBJECTION TO JUDGMENT ORDER AND (ii) ORDERING DISTRIBUTION

On November 7, 2008, this Court entered Judgment Order with regard to Riverside County California/Riverside County Treasurer ("Judgment Order") (Doc. # 118), which ordered the distribution of $303,191.70 to Riverside County, California and the Riverside County Treasurer (collectively, "Riverside") to satisfy Riverside's lien for delinquent real estate taxes.

The United States of America, Internal Revenue Service ("Government") appealed

---

8. The Judgment Order reserved distribution of $13,291.32 until further order of the Court to attempt to account for the Government's argument for subordination of alleged excessive interest. The Court finds that there is no reason for Trustee to continue to hold this amount.

entry of the Judgment Order to the United States District Court for the Northern District of Ohio ("District Court"). On September 21, 2009, the District Court vacated the Judgment Order. The Judgment Order was remanded for the Court to "clearly state its reasons for overruling [the Government's] objections to the Judgment Order."

The Government filed (i) United States' Written Objection to Judgment Order (Doc. # 193) on October 20, 2009; and (ii) United States' Supplement to Written Objection to Judgment Order (Doc. # 205) on December 22, 2009 (collectively, "Objection").

For the reasons stated in the Memorandum Opinion entered this date, the Court hereby (i) overrules the Government's Objection and (ii) orders distribution of $140,545.18 to Riverside in satisfaction of the remainder of its lien for delinquent real estate taxes.

**IT IS SO ORDERED.**